# 24-3296 (L)
## 25-119 (Con)

---

# UNITED STATES COURT OF APPEALS FOR THE SECOND CIRCUIT

NEWTON'S PHARMACY, INC.,

*Plaintiff-Appellant*

v.

PROCTOR & GAMBLE COMPANY, ET. AL.,

*Defendants-Appellees*

---

On Appeal from the United States District Court
For the Eastern District of New York

---

### BRIEF OF PLAINTIFF-APPELLANT NEWTON'S PHARMACY, INC.

---

Joe P. Leniski, Jr.
HERZFELD, SUETHOLZ,
GASTEL, LENISKI & WALL, PLLC
223 Rosa L. Parks Avenue, Ste. 300
Nashville, Tennessee 37203
(615) 800-6225

Alyson S. Beridon
HERZFELD, SUETHOLZ,
GASTEL, LENISKI & WALL
PLLC
600 Vine Street, Suite 2720
Cincinnati, Ohio 45202

## <u>CORPORATE DISCLOSURE STATEMENT</u>

Pursuant to Fed. R. App. P. 26.1 Newton's Pharmacy hereby makes the following disclosure:

Newton's Pharmacy does not have a parent corporation. No publicly held corporation holds 10% or more of Newton's Pharmacy's stock.

## TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ................................................................... iii

JURISDICTIONAL STATEMENT ............................................................ 1

STATEMENT OF ISSUES PRESENTED FOR REVIEW ....................... 2

STATEMENT OF THE CASE .................................................................. 4

I.   Nature of the Case and Relevant Procedural History ................... 4

STATEMENT OF FACTS ....................................................................... 10

I.   Drug Companies Market and Sell PE Products Which They Knew Did Not Relieve Nasal or Sinus Congestion ....................................... 10

II.  Newton's Pharmacy is an Independent Retail Pharmacy Whose Business was Harmed as a Result of Drug Company's False Marketing of PE Products ..................................................................................... 11

SUMMARY OF ARGUMENT ................................................................. 14

ARGUMENT ........................................................................................... 18

I.   THE DISTRICT COURT SHOULD HAVE GRANTED NEWTON'S PHARMACY'S MOTION FOR RELIEF FROM FINAL JUDGMENT…… ....................................................................................... 18

A.  The District Court's Denial of the Motion for Relief under Fed. R. Civ. P. 60(b) is Reviewed for an Abuse of Discretion ............... 18

i

B. Rule 60(b) is Broadly Construed to Serve the Interest of Substantial Justice and Afford Parties the Opportunity to Resolve Claims on their Merits. ................................................................... 19

C. Newton's Pharmacy is Entitled to Relief from Judgment Dismissing its Lanham Act Claim Under Rule 60(b)(1) ............... 22

    1. The District Court's dismissal of the Lanham Act claim with prejudice resulted from mistake, inadvertence, surprise, or excusable neglect regarding the meaning and intent of the Streamlined Complaint Order. .................................................... 22

      i. The parties and the District Court intended the Streamlined Complaint and early Motion to Dismiss to concern solely claims shared across all plaintiffs. ................. 23

      ii. The reservation of rights in the Streamlined Complaint Order is silent as to prejudice to plaintiffs resulting from a failure to assert additional federal law claims, such as Newton's Pharmacy's Lanham Act claim. ............................... 26

D. Alternatively, Newton's Pharmacy is Entitled to Relief from Judgment Under Rule 60(b)(6) to Avoid an Extreme and Undue Hardship Due to Dismissal of its Lanham Act Claim Not on the Merits ............................................................................................ 31

CONCLUSION ...................................................................................... 34

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*In re Bear Stearns Companies, Inc. Securities, Derivative, and ERISA Litigation,*
297 F.R.D. 90 (S.D.N.Y.2013) ............................................................ 17

*Beller & Keller v. Tyler,*
120 F.3d 21 (2d Cir. 1997) .................................................................. 2

*Branum v. Clark,*
927 F.2d 698 (2d Cir. 1991) .............................................................. 28

*Brennan-Centrella v. Ritz-Craft Corp. of Pennsylvania,*
942 F.3d 106 (2d Cir. 2019) .............................................................. 24

*Church & Dwight., Inc. v. SPD Swiss Precision Diagnostics, GmBH,*
843 F.3d 48 (2d Cir. 2016) ................................................................ 28

*Corning Glass Works v. Sumitomo Elec. U.S.A., Inc.,*
683 F. Supp. 979 (S.D.N.Y. 1988) .................................................... 25

*DeMarkey v. Greenwich Hosp. Ass'n,*
454 F. Supp. 351 (D. Conn. 1978) .............................................. 24, 27

*Klapprott v. United States,*
335 U.S. 601, 69 S.Ct. 384, 93 L.Ed. 266 (1948) ............................ 18

*Liljeberg v. Health Servs. Acquisition Corp.,*
486 U.S. 847, 108 S.Ct. 2194, 100 L.Ed.2d 855 (1988) .................... 18

*Mandala v. NTT Data, Inc.,*
88 F.4th 353 (2d Cir. 2023) ........................................................ 16, 28

*Matarese v. LeFevre,*
801 F.2d 98 (2d Cir.1986) ................................................................ 18

iii

*Meehan v. Snow*,
  652 F.2d 274 (2d Cir.1981) .................................................. 26

*Nemaizer v. Baker*,
  793 F.2d 58 (2d Cir. 1986) ............................................. 17, 19

*Newton's Pharmacy, Inc. v. Proctor & Gamble Company, et al.*,
  Case No. 1:23-cv-09307 ...................................................... 1

*In re: Oral Phenylephrine Litigation*,
  MDL No. 3089 ............................................................... 1, 5

*In re Oral Phenylephrine Mktg. & Sales Pracs. Litig.*,
  2024 WL 4606818 ..................................................... 7, 12, 26

*In re Oral Phenylephrine Mktg. & Sales Pracs. Litig.*,
  No. 23-MD-3089-BMC, -- F. Supp. 3d -- ............................... 7, 11

*POM Wonderful LLC v. Coca–Cola Co.*,
  573 U.S. 102, 134 S.Ct. 2228, 189 L.Ed.2d 141 (2014) ............... 27, 28

*Standard Enterprises, Inc. v. Bag-It, Inc.*,
  115 F.R.D. 38 (S.D.N.Y. 1991) ............................................ 27

*Stinson v. City Univ. of New York*,
  No. 24-803-CV, 2024 WL 5135230 (2d Cir. Dec. 17, 2024) ............... 16

*In re Terrorist Attacks on Sept. 11, 2001*,
  741 F.3d 353 (2d Cir. 2013) .............................................. 18

*United States v. Concepcion*,
  668 F. Supp. 3d 153 (W.D.N.Y. 2023) ..................................... 17

*United States v. Int'l Bhd. of Teamsters*,
  247 F.3d 370 (2d Cir. 2001) .............................................. 16

*VKK Corp. v. Nat'l Football League*,
  244 F.3d 114 (2d Cir. 2001) .............................................. 24

*Williams v. Citigroup Inc.*,
  659 F.3d 208 (2d Cir. 2011) .......................................... 26, 28

iv

## Statutes

28 U.S.C. § 1291 ............................................................................ 2

28 U.S.C. § 1407 ............................................................................ 4

28 U.S.C. § 2107(a) ........................................................................ 2

15 U.S.C. § 1125(A) .................................................................. 4, 10

18 U.S.C. § 1962(c)-(d) ................................................................. 20

## Other Authorities

Fed. R. App. 4(a)(1)(A) .................................................................. 2

Fed. R. Civ. P. 12(b) .................................................................... 28

Fed. R. Civ. P. 60(b).......................................................... *passim*

Fed. R. Civ. P. 60(b)(1) ...................................................... 17, 18, 25

Rule 60(b)(6) .......................................................... 17, 18, 25, 26

Rule 60(b)(6)'s............................................................................ 17

## JURISDICTIONAL STATEMENT

Plaintiff-Appellant Newton's Pharmacy, Inc. ("Newton's Pharmacy") originally filed a class action complaint in the Federal District Court for the Southern District of Ohio, *Newton's Pharmacy, Inc. v. Proctor & Gamble Company, et al.*, Case No. 1:23-cv-09307, on September 28, 2023. (Dkt. No. 1, Class Action Complaint.) On October 4, 2023, Newton's Pharmacy filed a Notice of Potential Tag-Along Action in the multidistrict litigation case *In re: Oral Phenylephrine Litigation*, MDL No. 3089. (Dkt. No. 82, Notice of Potential Tag-Along Action). Subsequently, Newton's Pharmacy and other related actions in *In re: Oral Phenylephrine Litigation* were ordered transferred to the Eastern District of New York for coordination or consolidated pretrial proceedings (SPA-1, Transfer Order; SPA-6). On October 29, 2024, the District Court issued a Memorandum Decision and Order granting the Defendants-Appellees' ("Drug Companies") motion to dismiss the New York state law claims and federal RICO claim in the Streamlined Complaint filed by the Interim Class Counsel. (SPA-17). On November 12, 2024, the District Court issued a final judgment order dismissing with prejudice "[a]ll claims in the complaints transferred into the above-captioned master

docket." (SPA-34). On December 16, 2024, the District Court denied Newton's Pharmacy's motion for relief from final judgment under Fed. R. Civ. P. 60(b). (SPA-37).

Newton's Pharmacy filed a timely Notice of Appeal of the judgment on January 10, 2025 (A-1314), and this appeal (Case No. 25-119) was then consolidated with the individual consumer plaintiffs' appeal (Case No. 24-3296). 28 U.S.C. § 2107(a); Fed. R. App. 4(a)(1)(A); *see also Beller & Keller v. Tyler*, 120 F.3d 21, 24 (2d Cir. 1997) ("Because Rule 60(b) rulings that are final are appealable, a party who is aggrieved by an adverse ruling on a Rule 60(b) motion must appeal it or waive any complaints about the ruling.") (quoting 12 Moore's Federal Practice § 60.69). The Court therefore has jurisdiction over the final judgment and the denial of Newton's Pharmacy's Rule 60(b) motion under 28 U.S.C. § 1291.

## STATEMENT OF ISSUES PRESENTED FOR REVIEW

Did the District Court abuse its discretion in denying Newton's Pharmacy's motion for relief from a final judgment entered in the underlying multidistrict litigation case which dismissed its Lanham Act claim with prejudice, where:

(i)     Newton's Pharmacy was the only plaintiff asserting a
        Lanham Act claim, and it was not common or representative
        across the action;

(ii)    the District Court ordered the court-appointed Interim Class
        Counsel to file a streamlined consolidated complaint alleging
        representative examples of parties' common conduct and
        claims under New York law and federal RICO law, and did
        not require or request the instant federal Lanham Act claim
        to be asserted in the plaintiffs' streamlined consolidated
        complaint;

(iii)   the District Court limited the grounds for the motion to
        dismiss to preemption and/or primary jurisdiction on the
        state law claims, and to arguments concerning dismissal of
        the federal RICO claim asserted in the streamlined
        consolidated complaint;

(iv)    Interim Class Counsel affirmed that the Streamlined
        Complaint contained "sufficient examples of the conduct and
        claims" alleged to be wrongful in the litigation such that
        dismissal of these claims would "resolve this litigation in its

3

entirety," but only if those claims were subject to disposal based on "preemption and/or primary jurisdiction and/or initial RICO arguments";

(v)    no party even sought to dismiss the Lanham Act claim; and

(vi)    the District Court did not address the merits of the Lanham Act claim in its order granting the motion to dismiss.

Fed. R. Civ. P. 60(b).

## STATEMENT OF THE CASE

### I.    Nature of the Case and Relevant Procedural History

This appeal is taken from an action on behalf of Newton's Pharmacy, which was centralized with cases brought by individual consumers against Drug Companies for pretrial purposes under 28 U.S.C. § 1407. Newton's Pharmacy is an independent pharmacy in Arkansas which purchased and sold orally-ingested over-the-counter ("OTC") medicines containing the drug phenylephrine ("PE Products").

On September 28, 2023, Newton's Pharmacy filed a Class Action Complaint in the Federal District Court for the Southern District of Ohio, one of numerous lawsuits filed nationwide alleging Drug Companies advertised and sold PE Products which incorporated false or misleading

marketing regarding their efficacy in relieving nasal or sinus congestion. (Dkt. No. 1). Newton's Pharmacy alleges that Defendants, manufacturers and sellers of PE Products, knew that phenylephrine was ineffective as a nasal and sinus decongestant but produced, marketed, sold, and distributed for resale products containing phenylephrine anyway. Newton's Pharmacy's Complaint sought class-wide relief under state law for breach of implied warranty of merchantability, fraud, negligent misrepresentation, and unjust enrichment. Newton's Pharmacy also filed suit under the federal Lanham Act, 15 U.S.C. § 1125(A), based on its distinct status as a retail pharmacy seeking damages associated with remediating the effect of Drug Companies' false advertising, *e.g.* removing or disposing of its PE Products inventory or otherwise incurring costs to correct Drug Companies' misleading representations to their customers (Dkt. No. 1).

On October 4, 2023, Newton's Pharmacy filed a Notice of Potential Tag-Along Action in the ongoing multidistrict litigation *In re: Oral Phenylephrine Litigation*, MDL No. 3089. (Dkt. No. 82, Notice of Potential Tag-Along Action). On December 6, 2023, Newton's Pharmacy's case was subsequently transferred along with other related

consumer class actions filed against Drug Companies to the Honorable Brian M. Cogan for the Eastern District of New York (the "District Court") for coordination or consolidated pretrial proceedings (SPA-1, Transfer Order; SPA-6, CTO-1).

At a status conference on April 2, 2024, the District Court announced that it would appoint "Interim Class Counsel" for plaintiffs for the sake of "efficiency and streamlining" the proceedings (A-1149, Tr. p. 6-7). The District Court also discussed with the parties the filing a "skinny" or "bellwether complaint" confined to "central issues that…span all 50 states" which would allow Drug Companies to "get[] the threshold of cross-cutting issues resolved early" by a motion to dismiss on preemption grounds. (A-1149, Tr. p. 10-12). On April 17, 2024, the District Court ordered Interim Class Counsel to file "an Initial Streamlined Consolidated Complaint ["Streamlined Complaint"] under New York law alleging representative examples of the conduct and claims they allege to be at issue in this Multidistrict Litigation." ("Streamlined Complaint Order.") (SPA-10). The Streamlined Complaint Order also ordered Drug Companies to file a joint motion to dismiss limited to arguments "solely on preemption and/or primary jurisdiction"

6

grounds and established a briefing schedule. (SPA-10). In the Parties'
Reservation of Rights section of the Streamlined Complaint order,
Interim Class Counsel represented that the Streamlined Complaint shall
set forth "sufficient representative examples of the conduct and claims
that they allege to be wrongful," such "that a motion to dismiss based on
preemption and/or primary jurisdiction and/or initial RICO arguments
will, if such arguments prevail, resolve this litigation in its entirety,
regardless of additional specific examples of wrongful conduct, additional
products named, additional Plaintiff-related allegations, or additional
state-law claims that are plead or could be plead in a future Full master
Consolidated Complaint," but omitted mention of other federal law
causes of action. (SPA-10, SPA-13.)

Interim Class Counsel filed the Streamlined Complaint on May 3,
2024, alleging claims under New York state law and, for the first time in
any complaint filed in the multidistrict litigation, a federal RICO claim.
(A-131). The District Court subsequently ordered that Drug Companies
could move to dismiss the federal RICO claim raised for the first time in
the Streamlined Complaint. ("Amended Streamlined Complaint Order")
(SPA-13). The District Court further ordered that its ruling "on

7

preemption and/or primary jurisdiction and/or any initial RICO argument(s) raised" in a motion to dismiss "will apply to all cases in this multidistrict litigation or otherwise subject to transfer into this multidistrict litigation." (SPA-13).

Following briefing and argument by the parties, the Court granted Drug Companies' motion to dismiss the Streamlined Complaint on October 29, 2024. (SPA-17); *see also In re Oral Phenylephrine Mktg. & Sales Pracs. Litig.*, No. 23-MD-3089-BMC, -- F. Supp. 3d --; 2024 WL 4606818 (E.D.N.Y. Oct. 29, 2024)). The District Court reiterated at the outset that its opinion was predicated on the parties' agreement "that plaintiffs would file this streamlined complaint, and defendants would move to dismiss it, to test claims and defenses common across the consolidated cases." (*Id*. at 2) (emphasis added). The District Court then held that all state law claims by individual consumer plaintiffs were preempted by the Federal Food, Drug, and Cosmetic Act (the "FDCA"), and that plaintiffs lacked statutory standing to bring the RICO claim. (*Id*. at III-1). On November 12, 2024, the District Court entered Final Judgment in favor of Drug Companies, and dismissed with prejudice "[a]ll claims in the complaints transferred into the above-captioned

8

master docket," which by implication dismissed Newton's Pharmacy's Lanham Act claim. (SPA-34).

On November 15, 2024, Newton's Pharmacy moved for partial relief from final judgment dismissing with prejudice its Lanham Act claim under Fed. R. Civ. P. 60(b) due to mistake, inadvertence, surprise, and/or excusable neglect generated by the case's unique procedural posture (A-1170) and otherwise resulted from the extraordinary circumstances of the underlying lawsuit. In support, Newton's Pharmacy argued that: the District Court, in an effort to front-load the preemption and/or primary jurisdiction defense advanced by Drug Companies, directed that no claims other than the New York state claims and federal RICO claims be included in the Streamlined Complaint; that Drug Companies despite having notice of Newton's Pharmacy's Lanham Act claim did not move to dismiss it; and the District Court only dismissed pending state law and RICO claims based on preemption, primary jurisdiction, and lack of standing, and did not address the Lanham Act claim. Newton's Pharmacy's motion also sought remand of its lawsuit back to the Federal District Court for the Southern District of Ohio where it was originally

filed, so that the district court there could adjudicate the remaining federal Lanham Act claim. (A-1170).

On December 16, 2024, the District Court denied Newton's Pharmacy's motion for relief from final judgment, holding that because it failed to object to Lanham Act claim being excluded from the Streamlined Complaint and otherwise did not take affirmative steps to carve-out or preserve the Lanham Act claim, it "has not shown that it is entitled to the extraordinary relief afforded by Rule 60(b)." (SPA-37). On January 10, 2025, Newton's Pharmacy filed a timely Notice of Appeal. (A-1314).

## STATEMENT OF FACTS

### I.   Drug Companies Market and Sell PE Products Which They Knew Did Not Relieve Nasal or Sinus Congestion

The PE Products manufactured and sold by Drug Companies account for approximately $1.6 billion of the $2 billion annual market for over-the-counter ("OTC") drugs meant to relieve congestion. (Class Action Complaint, ¶15-16, Dkt. No. 1). The Drug Companies marketed their PE Products containing the ingredient phenylephrine as medicines which will relief the symptoms of nasal congestion. (Complaint, ¶¶23-31).

On September 11, 2023, the Nonprescription Drug Advisory Committee ("NDAC") to the Food and Drug Administration issued a report which found that the PE Products marketed and sold by Drug Companies to treat nasal congestion has no effect beyond placebo in treating that condition. (Complaint, ¶1). NDAC reached its conclusion after an exhaustive review of studies that were long-known to the Drug Companies which demonstrate that the active ingredient in the PE Products is not an effective decongestant. (Complaint, ¶36-37). Despite having this knowledge, Drug Companies nevertheless promoted their PE Products as effective decongestants. (Complaint., ¶38).

## II. Newton's Pharmacy is an Independent Retail Pharmacy Whose Business was Harmed as a Result of Drug Company's False Marketing of PE Products

Newton's Pharmacy is an independent retail pharmacy doing business in Russellville, Arkansas. (Compl., ¶4, Dkt. No. 1). Customers frequent retail pharmacies for medicines that alleviate the symptoms caused by common cold and flu, requiring that Newton's Pharmacy and other pharmacies maintain an adequate stock of the Drug Companies' PE Products. (Compl., ¶¶39-43). At the time of the NDAC report on the non-efficacy of the Drug Companies' PE Products, Newton's Pharmacy

11

and thousands of other similarly situated retail pharmacies across the country had hundreds of these PE Products stocked on its shelves that immediately lost value, and required remedial action such as pulling the products from its shelves, cancelling wholesaling contracts, or imposing disclaimers that the manufacturers to remedy the false and misleading marketing. (Compl., ¶¶1; 44-46).

Newton's Pharmacy filed its original Complaint against the Drug Companies on September 28, 2023 in the Federal District Court for the Southern District of Ohio, asserting claims under the laws of its home jurisdiction of Arkansas (many of which overlapped with other individual consumer plaintiffs' own state law claims) as well as a count for false advertising under the federal Lanham Act, 15 U.S.C. § 1125(A). (Compl., ¶¶56-98). Newton's Pharmacy sought damages and equitable relief, individually and on behalf of other class members, for Drug Companies' improper marketing sales tactics that have resulted in retail pharmacy loss of sales and other pecuniary harm as a result of their unfair and deceptive practices. (Compl., Prayer for Relief).

Newton's Pharmacy's case was transferred to the Eastern District of New York as part of the MDL proceeding challenging Drug Companies'

sale and marketing of the PE Products, *In re Oral Phenylephrine Mktg. & Sales Pracs. Litig.*, No. 23-MD-3089-BMC, for coordination or consolidated pretrial proceedings. (SPA-1). The District Court appointed Interim Class Counsel and ordered them to file a Streamlined Complaint under RICO and New York state law alleging representative examples of common conduct and claims allegedly at issue in the MDL related to the marketing and labeling of the PE Products. (SPA-10). The District Court granted Drug Companies' motion to dismiss with prejudice all the state law claims in the streamlined complaint, which the Court found to be preempted by the FDA's approval of phenylephrine as a "safe and effective" nasal decongestant, and dismissed the federal RICO claim because the consumer plaintiffs, as indirect purchasers, lacked statutory standing. (SPA-17). Subsequently, the District Court issued a final judgment dismissing with prejudice all claims pending in the MDL. (SPA-34). As neither the motion to dismiss nor the District Court's order on the same addressed Newton's Pharmacy's distinct Lanham Act claim, it filed a motion for partial relief from the District Court's entry of judgment and for remand of its Lanham Act claim back to the transferring district court. (A-1170). The District Court denied

13

Plaintiff's motion on the basis that the Court's dismissal of the streamlined complaint based on preemption was sufficient to resolve the litigation in its entirety, including Newton's Pharmacy's Lanham Act claim. (SPA-37).

## SUMMARY OF ARGUMENT

The District Court abused its discretion in denying Newton's Pharmacy's motion for relief from final judgment which dismissed its Lanham Act claim with prejudice. Under Federal Rule of Civil Procedure 60(b), a party may be relieved from a final judgment for reasons caused by mistake, inadvertence, surprise, excusable neglect or any other reason justifying relief. Whether caused by mistake, inadvertence, excusable neglect or otherwise, it would be inequitable and contrary to the precepts of justice and due process for the Court to dismiss Newton's Pharmacy's Lanham Act claim with prejudice for the following reasons:

- The parties and the District Court intended that, at the earliest stage of the multidistrict litigation, "plaintiffs would file [a] streamlined complaint, and defendants would move to dismiss it, to test **claims and defenses common** across the consolidated cases." (*In re Oral Phenylephrine Mktg. & Sales Pracs. Litig.*, 2024 WL

14

4606818 at *1) (emphasis added). To this end, the District Court appointed Interim Class Counsel and ordered the filing of a Streamlined Complaint that contained only exemplar state law claims under New York law, and a federal RICO claim. The District Court did not require nor permit Newton's Pharmacy's Lanham Act claim to be included in the Streamlined Complaint. Moreover, the District Court limited the Drug Companies' motion to dismiss solely to arguments "based on preemption and/or primary jurisdiction and/or initial RICO arguments," and therefore the motion to dismiss did not argue any grounds to dismiss Newton's Pharmacy's Lanham Act claim. Finally, the District Court's ensuing order dismissing the Streamlined Complaint based on preemption and/or primary jurisdiction and lack of statutory standing to bring the RICO claim does not set forth any grounds to dismiss the Lanham Act claim, which was never afforded a merits evaluation. Because the Lanham Act claim is not subject to the same preemption or statutory standing arguments which compelled the District Court to dismiss all other state law and RICO claims asserted by the MDL plaintiffs, and because Drug Companies did not move to dismiss or

15

otherwise challenge the sufficiency of the Lanham Act claim, there are no justifiable grounds for the District Court to dismiss it with prejudice.

- In filing the Streamlined Complaint and subjecting it to an early motion to dismiss, Interim Class Counsel stipulated that "sufficient representative examples of the conduct and claims that they allege to be wrongful that a motion to dismiss **based on preemption and/or primary jurisdiction and/or initial RICO arguments** will, if such arguments prevail, resolve this litigation in its entirety, regardless of additional specific examples of wrongful conduct, additional products named, additional Plaintiff-related allegations, or additional state-law claims that are plead or could be plead in a future Full master Consolidated Complaint." (SPA-10, SPA-13) (emphasis added). However, plaintiffs did not agree that any claims **not** subject to these enumerated arguments would be disposed of, such as the federal Lanham Act claim. SPA-13 at 3.

In short, the District Court abused its discretion in denying Newton's Pharmacy's motion for relief from the final judgment due to the unique and complex procedural circumstances of the underlying

16

multidistrict litigation. The District Court's order appointing Interim Class Counsel did not deprive Newton's Pharmacy of any of its rights as a party in the MDL, nor did it dispose of Newton's Pharmacy's ability to continue asserting its claims against Drug Companies. The express intent behind the Streamlined Complaint was to subject the common state law claims and federal RICO claim to early scrutiny through a motion to dismiss, which the District Court confirmed through its orders limiting the Streamlined Complaint and motion to dismiss briefing strictly to claims subject to preemption and/or primary jurisdiction (state law claims) or which test the federal RICO claim. The Drug Companies could have insisted on including the Lanham Act but did not, and thus it was not included among the claims which would be challenged by the motion to dismiss, and the District Court's order of dismissal does not address it. The plaintiffs' own "Reservation of Rights" incorporated in the District Court's order which disclaims prejudice to plaintiffs by failing to allege certain enumerated claims related to the marketing of the PE Products excludes mention of other federal law claims like Newton's Pharmacy's Lanham Act claim. In sum, Newton's Pharmacy had no cause to believe that resolving the motion to dismiss in favor of Drug

17

Companies would result in dismissal of its Lanham Act claim, let alone with prejudice. It is evident that the District Court's dismissal of Newton's Pharmacy's Lanham Act claim resulted from mistake, inadvertence, surprise, or excusable neglect by the parties, by the District Court, or both. For these reasons, or as the result of extraordinary circumstances which lead to this injustice, Newton's Pharmacy is entitled to relief under Rule 60(b).

The Court should reverse the District Court, instruct that the Lanham Act claim be reinstated, and direct Newton's Pharmacy's action be remanded back to the Southern District of Ohio where it was originally filed, so that the district court there can adjudicate the remaining federal Lanham Act claim.

## ARGUMENT

### I. THE DISTRICT COURT SHOULD HAVE GRANTED NEWTON'S PHARMACY'S MOTION FOR RELIEF FROM FINAL JUDGMENT

#### A. The District Court's Denial of the Motion for Relief under Fed. R. Civ. P. 60(b) is Reviewed for an Abuse of Discretion

The Court reviews the district court's denial of a motion for relief under Rule 60(b) for abuse of discretion. *Mandala v. NTT Data, Inc.*, 88

18

F.4th 353, 359 (2d Cir. 2023) (citation omitted). A district court abuses its discretion when it "bases its ruling on an erroneous view of the law or on a clearly erroneous assessment of the evidence, or renders a decision that cannot be located within the range of permissible decisions." *Stinson v. City Univ. of New York*, No. 24-803-CV, 2024 WL 5135230, at *1–2 (2d Cir. Dec. 17, 2024) (*citing Yukos Cap. S.A.R.L. v. Feldman*, 977 F.3d 216, 234 (2d Cir. 2020). The party seeking relief from judgment has the burden of proof. *United States v. Int'l Bhd. of Teamsters*, 247 F.3d 370, 391 (2d Cir. 2001) (internal citation omitted)

### B. Rule 60(b) is Broadly Construed to Serve the Interest of Substantial Justice and Afford Parties the Opportunity to Resolve Claims on their Merits.

The "whole purpose of Rule 60(b) is to make an exception to finality...and the Rule is designed to afford parties an opportunity to resolve a dispute on its merits." *Mandala*, 88 F.4th 361–62 (internal quotations and citations omitted). "A Rule 60(b) motion should be broadly construed to do substantial justice, yet final judgments should not be lightly reopened." *United States v. Concepcion*, 668 F. Supp. 3d 153, 158 (W.D.N.Y. 2023) (quotations and citation omitted). In exercising its judicial discretion, the Court must "balance the policy in favor of hearing

a litigant's claims on the merits against the policy in favor of finality." *In re Bear Stearns Companies, Inc. Securities, Derivative, and ERISA Litigation*, 297 F.R.D. 90, 98 (S.D.N.Y.2013) (*quoting Kotlickv v. United States Fidelity & Guaranty Co.*, 817 F.2d 6, 9 (2d Cir.1987)); *see also Nemaizer v. Baker*, 793 F.2d 58, 63 (2d Cir. 1986) ("Rule 60(b) relief is designed to afford parties an opportunity to resolve a dispute on its merits.")

Newton's Pharmacy seeks relief from final judgment under Rule 60(b) on the grounds of mistake, inadvertence, surprise, or excusable neglect (*see* Fed. R. Civ. P. 60(b)(1)), and for other reasons that justify relief under Rule 60(b)(6)'s "catch-all provision," which may be invoked when the asserted grounds for relief are not recognized elsewhere in the Rule." *Metzler Inv. GmbH v. Chipotle Mexican Grill*, Inc., 970 F.3d 133, 143 (2d Cir. 2020) (*quoting Nemaizer v. Baker*, 793 F.2d 58, 63 (2d Cir. 1986)).

Relief from a judgment is warranted under Rule 60(b)(1) based solely for reasons of "mistake, inadvertence, surprise, or excusable neglect." Fed. R. Civ. P. 60(b)(1). Rule 60(b)(6), on the other hand, "grants federal courts broad authority to relieve a party from a final judgment

20

upon such terms as are just, provided that the motion is made within a reasonable time and is not premised on one of the grounds for relief enumerated in clauses (b)(1) through (b)(5)." *Liljeberg v. Health Servs. Acquisition Corp.*, 486 U.S. 847, 863, 108 S.Ct. 2194, 100 L.Ed.2d 855 (1988) (internal quotation marks and citation omitted). Rule 60(b)(6) "confers broad discretion on the trial court to grant relief," and "constitutes a grand reservoir of equitable power to do justice in a particular case." *Matarese v. LeFevre*, 801 F.2d 98, 106 (2d Cir.1986) (internal quotation marks omitted). Relief under this catch-all provision of Rule 60(b) is warranted "where there are extraordinary circumstances, or where the judgment may work an extreme and undue hardship, and should be liberally construed when substantial justice will thus be served." *Id.* (internal citations and quotation marks omitted). "In simple English, the language of the 'other remedies' clause (*i. e.*, Rule 60(b)(6)) . . . vests power in courts adequate to enable them to vacate judgments whenever such action is appropriate to accomplish justice." *Klapprott v. United States*, 335 U.S. 601, 614-15, 69 S.Ct. 384, 390, 93 L.Ed. 266 (1948). "Properly applied Rule 60(b) strikes a balance between serving the ends of justice and preserving the finality of judgments." *In re Terrorist*

*Attacks on Sept. 11, 2001*, 741 F.3d 353, 357 (2d Cir. 2013) (*quoting*

*Nemaizer v. Baker*, 793 F.2d 58, 61 (2d Cir.1986)).

### C. Newton's Pharmacy is Entitled to Relief from Judgment Dismissing its Lanham Act Claim Under Rule 60(b)(1)

1. <u>The District Court's dismissal of the Lanham Act claim with prejudice resulted from mistake, inadvertence, surprise, or excusable neglect regarding the meaning and intent of the Streamlined Complaint Order.</u>

It was error for the District Court to deny Newton's Pharmacy relief

from the judgment based purely on the reservation of rights from its

Streamlined Complaint Order, because that language only addresses the

effect that dismissal would have on state law and federal RICO claims

common across all plaintiffs, and no others. The District Court also erred

in failing to construe the reservation of rights in light of the rest of the

provisions of the Streamlined Complaint Order, which make it clear the

parties' intended to prioritize an early motion to dismiss predicated on

preemption and primary jurisdiction, neither of which apply to the

Lanham Act claim. These errors caused the District Court to dismiss

Newton's Pharmacy's unique Lanham Act claim without first examining

its merits, which is the very injustice Rule 60(b) is designed to remedy.

*Nemaizer*, 793 F.2d at. 63.

22

i.  <u>The parties and the District Court
    intended the Streamlined Complaint and
    early Motion to Dismiss to concern solely
    claims shared across all plaintiffs.</u>

Newton's Pharmacy was reasonable in construing the Streamlined
Complaint Order as preserving its Lanham Act claim for adjudication at
a later stage of the litigation. Interim Class Counsel, Drug Companies,
and the District Court all endorsed an approach first suggested at the
April 2, 2024 status conference, which was to permit the filing of a
"skinny" or "bellwether complaint" alleging only "central issues
that…span all 50 states," for the sole purpose of "getting the threshold of
cross-cutting issues resolved early" through a contemplated motion to
dismiss (A-1149, Tr. p. 10-12). In its ensuing Streamlined Complaint
Order, the District Court ordered the filing of a Streamlined Complaint
under New York law (and later permitted a federal RICO claim), and
expressly ordered Drug Companies' motion to dismiss to focus "solely on
preemption and/or primary jurisdiction" grounds (and later, arguments
applicable to RICO). (SPA-10). Thus, it is clear the parties and the
District Court designated the Streamlined Complaint Order as the
catalyst for Drug Companies to file certain dismissal arguments they
believed to be dispositive of common claims across the litigation. Indeed,

23

Interim Class Counsel proceeded to file the Streamlined Complaint, asserting claims arising solely under New York state law and federal RICO.[1] (SPA-34). Not surprisingly, the Streamlined Complaint did not include a count under the federal Lanham Act, which only Newton's Pharmacy had asserted.

Given the agreement between the parties and the District Court, Newton's Pharmacy had no cause to insist that its Lanham Act claim be included for early resolution in the Streamlined Complaint. The Lanham Act claim was unique to Newton's Pharmacy as a pharmacy plaintiff, and was not asserted by any non-pharmacy plaintiff. As this claim did not "cross-cut" across plaintiffs in the multidistrict litigation, there were no efficiencies to be gained. Drug Companies did not insist the claim be included, and the Streamlined Complaint Order did not contemplate early adjudication of the Lanham Act claim. Moreover, the District Court limited the Drug Companies' motion to dismiss solely to arguments "based

---

[1] Specifically, the Streamlined Complaint brought claims for Violation of the New York Deceptive Acts and Practices Act (Count 1); Violation of the New York False Advertising Act (Count 2); Breach of Express Warranty (Count 3); Breach of Implied Warranty of Merchantability (Count 4); Unjust Enrichment (Count 5); Fraudulent Concealment (Count 6); and Violations of the Racketeer Influenced and Corrupt Organizations Act (RICO), 18 U.S.C. § 1962(c)-(d) (Count 7). (SPA-34).

on preemption and/or primary jurisdiction and/or initial RICO arguments" which did apply to the common state law and RICO claims asserted by individual consumer plaintiffs, but were not appliable to Newton's Pharmacy's Lanham Act claim. (SPA-13).

As the District Court acknowledged in its order denying Newton Pharmacy's motion for relief from the judgment, the claims selected for inclusion in the Streamlined Complaint "turned on threshold issues common to the entire action." (SPA-37 at 1). The Lanham Act claim is not common across the entire action, and is not subject to the threshold arguments that the parties and the District Court prescribed for the motion to dismiss. To the extent the Streamlined Complaint Order has been construed as also compelling dismissal of the unique but unasserted federal Lanham Act claim, which is not subject to the referenced preemption, primary jurisdiction, or RICO arguments, it appears contrary to the intentions of both the parties and the District Court. At best, the dismissal of the Lanham Act claim can be viewed as an unintended effect of the concerted effort to efficiently front-load Drug Companies' dismissal arguments to the claims that plaintiffs shared in common across the litigation. Were it not for the assertions in the Streamlined Complaint

25

Order's reservation of rights, there would be no dispute as to why the Lanham Act was excluded from the Streamlined Complaint and unchallenged by the motion to dismiss.

          ii.   <u>The reservation of rights in the Streamlined Complaint Order is silent as to prejudice to plaintiffs resulting from a failure to assert additional federal law claims, such as Newton's Pharmacy's Lanham Act claim.</u>

The source of the "mistake, inadvertence, surprise, or excusable neglect" appears to be the parties' "Reservation of Rights" under the Streamlined Complaint Order. In that section, Interim Class Counsel affirmed that the Streamlined Complaint contained "sufficient examples of the conduct and claims" alleged to be wrongful in the litigation such that dismissal of these claims would "resolve this litigation in its entirety, regardless of additional specific examples of wrongful conduct, additional products named, additional Plaintiff-related allegations, or additional state-law claims that are pled or could be pled in a future Full Master Consolidated Complaint" if those claims are disposed of because of an argument based on "preemption and/or primary jurisdiction and/or initial RICO arguments." (SPA-13 at 2). Notably, the "regardless of" list does not include additional federal law claims (*e.g.* the federal Lanham Act

claim), even though the list does expressly include additional state-law claims that are pled or could be pled. *Id.* The reservation of rights also conspicuously omits reference to federal law claims in its disclaimer of prejudice to plaintiffs, although it expressly references "the laws of any state other than New York." *Id.*[2] Thus, to the extent any plaintiff has a federal cause of action not susceptible to preemption, primary jurisdiction, or RICO arguments (*e.g.* the federal Lanham Act claim) that was not asserted in the Streamlined Complaint, the reservation of rights is silent.

Contrary to the order denying relief from judgment, the Lanham Act claim is not analogous to "additional specific example[s] of wrongful conduct" that Interim Class Counsel stipulated would be tossed out if the District Court granted the Drug Companies' motion to dismiss. The reservation of rights specifically enumerates several categories of plaintiffs' allegations that Interim Class Counsel stipulated would be dismissed upon a successful motion by Drug Companies, but federal law

---

[2] "In filing the Initial Streamlined Complaint, Plaintiffs will not be prejudiced by failure to (1) allege every single instance of the conduct they allege to be wrongful relating to the marketing and labeling of oral phenylephrine cold medicines, (2) identify all products at issue, (3) file on behalf of every named plaintiff in this litigation, or (4) refer to the laws of any state other than New York."

claims is not one of them. However, Interim Class Counsel did specifically stipulate that "additional state-law claims" that are pled or could be pled in the future would be subject to possible dismissal with finality. Under the principle of *expressio unius est exclusio alterius*,[3] the fact that Interim Class Counsel identified that additional state law claims could be dismissed, but omitted listing federal law claims, suggests that Newton's Pharmacy's Lanham Act claim was not intended to be included, either in this portion of the stipulation or in the provision disclaiming prejudice to plaintiffs. (SPA-13 at 2); *see also VKK Corp. v. Nat'l Football League*, 244 F.3d 114, 130 (2d Cir. 2001) (noting that "sophisticated commercial actors" NFL and its member clubs who were parties to a settlement agreement in antitrust litigation referenced "past, present, and future ... Releasors" but did not list future member club "Releasees," indicating their intent not to include them.). Under this principle, it would be improper to read the reservation of rights as lumping federal law claims into the bucket of "additional specific example[s] of wrongful conduct,"

---

[3] "[M]ention of one impliedly excludes others." *Brennan-Centrella v. Ritz-Craft Corp. of Pennsylvania*, 942 F.3d 106, 111 (2d Cir. 2019) (quoting *Greene v. United States*, 79 F.3d 1348, 1355 (2d Cir. 1996).

when Interim Class Counsel, who are familiar with the claims and conduct at issue in the litigation, specifically identified state law claims as a separate bucket subject to dismissal.

This is not a case where the party moving for relief under Rule 60(b) "made an informed and intelligent decision to stipulate a dismissal of an action even though such a decision subsequently appears unwise." *DeMarkey v. Greenwich Hosp. Ass'n*, 454 F. Supp. 351, 354 (D. Conn. 1978) (denying relief under Rule 60(b)(6) because the plaintiff chose to submit to binding arbitration rather than litigate its claims in court). Instead, this case is like *Corning Glass Works v. Sumitomo Elec. U.S.A., Inc.*, 683 F. Supp. 979 (S.D.N.Y. 1988). There, movants sought relief under Rule 60(b)(1) from a judgment against them in a patent infringement case because its counsel, relying on an arguably misleading instruction from the court, refrained from introducing evidence relating to willfulness during the liability phase of the trial. *See id*. at 683 F. Supp. at 980 (stating that it would grant Rule 60(b)(1) motion based on the confusion that prejudiced the movants, who are "entitled to a clear day in court on the trial of that issue.").

29

Newton's Pharmacy did not stipulate or make an otherwise conscientious choice to withhold the Lanham Act claim from the Streamlined Complaint so it would not be subject to scrutiny on the merits. To the contrary, the Streamlined Complaint Order contemplated the resolution of shared claims, omitted other federal claims as being affected by possible dismissal of the Streamlined Complaint, and deferred consideration of other arguments (such as the Drug Companies' lack of personal jurisdiction defenses) until a later time. (SPA-13 at 9). Newton's Pharmacy was heeding the direction of the District Court and the parties, summarized in plain terms by the District Court in its opinion on the motion to dismiss: "plaintiffs would file [a] streamlined complaint, and defendants would move to dismiss it, to test claims and defenses **common** across the consolidated cases." (*In re Oral Phenylephrine Mktg. & Sales Pracs. Litig.*, 2024 WL 4606818 at \*1) (emphasis added). The Streamlined Complaint Order preserved all other arguments pertaining to federal law claims, and thus appeared to preserve Newton's Pharmacy's unique Lanham Act claim rather than toss it in the bucket of claims and conduct that were specifically identified as being subject to possible dismissal with prejudice. (SPA-13). Newton's Pharmacy should not suffer prejudice

30

having not asserted its Lanham Act claim earlier in the consolidated proceeding, and thus relief under Rule 60(b) is proper here.

### D. Alternatively, Newton's Pharmacy is Entitled to Relief from Judgment Under Rule 60(b)(6) to Avoid an Extreme and Undue Hardship Due to Dismissal of its Lanham Act Claim Not on the Merits

Dismissing Newton's Pharmacy's claims with finality without consideration of the merits given the extreme prejudice imposed and the unique and complex procedural posture of the underlying litigation represent "extraordinary circumstances" that justify relief under Rule 60(b)(6). The District Court's dismissal of the Lanham Act claim is akin to a default judgment which foregoes resolution of a party's claims on the merits. There is a "strong preference" that courts in this federal circuit "resolv[e] disputes on the merits (*Williams v. Citigroup Inc.*, 659 F.3d 208, 212–13 (2d Cir. 2011)) and "resolv[e] doubts in favor of a trial on the merits." (*Meehan v. Snow*, 652 F.2d 274, 277 (2d Cir.1981)). The Second Circuit has held that "'[t]he extreme sanction of a default judgment must remain a weapon of last, rather than first, resort,' which should only be imposed 'upon a serious showing of a willful default.'" *Bicicletas Windsor*, 783 F. Supp. 781, 787 (2d Cir. 1992) (*quoting Davis v. Musler,* 713 F.2d 907, 916 (2d Cir. 1983) (citations omitted)). Relevant to the present

appeal, "Rule 60(b) is its strongest in the context of setting aside default judgments ... [t]here is much more reason for liberality in reopening a judgment when the merits of the case never have been considered than there is when the judgment comes after a full trial on the merits." *Standard Enterprises, Inc. v. Bag-It, Inc.*, 115 F.R.D. 38, 39 (S.D.N.Y. 1991) (internal citations omitted).

Unlike the movant in *DeMarkey*, cited above, here Newton's Pharmacy was never given its "day in court" on its Lanham Act claim. The Drug Companies were aware of the Lanham Act claim and never subjected it to a motion to dismiss. The District Court never ruled on the merits of a motion to dismiss the Lanham Act claim.[4] As the Supreme

---

[4] The District Court's speculation in dictum that if challenged by a motion to dismiss, the Lanham Act claim would likely be precluded under the FDCA misapprehends Newton's Pharmacy's allegations and the Supreme Court and Second Circuit rulings which directly refute such a finding. Newton's Pharmacy does not attack the FDA's "policy determination" that phenylephrine when taken orally is an effective nasal decongestant. Instead, the Lanham Act claim challenges the literal and actual falsity of the defendants' marketing. Congress did not delegate to the FDA the authority to allow Defendants to advertise that their oral phenylephrine products have therapeutic effect when they know in truth that this statement is has no basis in fact. *See POM Wonderful LLC v. Coca–Cola Co.*, 573 U.S. 102, 134 S.Ct. 2228, 189 L.Ed.2d 141 (2014) (holding that the FDCA and the Lanham Act

Court has explained, when "the underlying facts or circumstances relied upon by a plaintiff may be a proper subject of relief, he ought to be afforded an opportunity to test his claim on the merits." *Mandala,* 88 F.4th at 365 (*citing Foman v. Davis*, 371 U.S. 178, 182, 83 S.Ct. 227, 9 L.Ed.2d 222 (1962). *See also Branum v. Clark*, 927 F.2d 698, 705 (2d Cir. 1991) (reversing denial of pro se plaintiff's Rule 60(b) motion, noting courts "should not dismiss without granting leave to amend at least once when a liberal reading of the complaint gives any indication that a valid claim might be stated."). Permitting Newton's Pharmacy to litigate its Lanham Act claim, including subjecting it to scrutiny under Fed. R. Civ. P. 12(b), is consistent with this Court's "strong preference for resolving disputes on the merits." *Williams,* 659 F.3d 208, 212–13. But Newton's Pharmacy will

_____

"complement each other with respect to labeling," and expressly rejecting the argument that Lanham Act claims are precluded in situations when the FDCA or the FDA, through its regulations, have "specifically require[d] or authorize[d]" a challenged aspect of a label) (*id.* at 2232; 2238-2240); *Church & Dwight., Inc. v. SPD Swiss Precision Diagnostics, GmBH*, 843 F.3d 48, (2d Cir. 2016) (determining that compliance with FDA regulation "does not create a ceiling that bars still better protections against the capacity of the representations to mislead," and that a Lanham Act false-advertising claim can challenge information on a drug's label that "renders [an] advertisement literally or implicitly false," even when the FDA has approved the label.) (*id.* at 63-64; 73 n.13).

33

never have its day in court unless this Court reverses the denial of its Rule 60(b) motion.

## CONCLUSION

For the foregoing reasons, the Court should: (1) reverse the District Court's order denying Newton's Pharmacy's motion for relief from judgment; and (2) order that the case be remanded to the Federal District Court for the Southern District of Ohio for further proceedings on the merits of Newton's Pharmacy's Lanham Act claim.

Dated: March 26, 2025      Respectfully submitted,

*/s/ Joe P. Leniski, Jr.*
Joe P. Leniski, Jr.
HERZFELD, SUETHOLZ, GASTEL,
LENISKI AND WALL, PLLC
The Freedom Center
223 Rosa L. Parks Avenue, Suite 300
Nashville, Tennessee 37203
(615) 800-6225
joey@hsglawgroup.com

*Attorney for Plaintiff/Appellant*

34

## CERTIFICATE OF COMPLIANCE

The undersigned certifies that this brief complies with the type-volume limit of Fed. R. App. P. 32(a)(7)(B), the word limit of Local Rule 32.1(a)(4)(A) because, excluding the parts of the document exempted by Fed. R. App. P. 32(f): this document contains 6658 words.

This document complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6) because: this document has been prepared in a proportionally spaced typeface using Microsoft Word in 14-point font Century Schoolbook.

*/s/ Joe P. Leniski, Jr.*
Joe P. Leniski Jr.

# SPECIAL APPENDIX

i.

# TABLE OF CONTENTS

**Page**

Transfer Order, *In Re: Oral Phenylephrine Marketing and Sales Practices Litigation*, Case No. 1:23-md-03089 (District Court Docket No. 1), dated December 6, 2023 ..................... SPA-1

Conditional Transfer Order (CTO-1), *In Re: Oral Phenylephrine Marketing and Sales Practices Litigation*, MDL No. 3089, (District Court Docket No. 4), dated December 19, 2023 ......................................................... SPA-6

Order Governing Plaintiffs' Initial Streamlined Consolidated Complaint and Defendants' Motion to Dismiss in Response, *In Re: Oral Phenylephrine Marketing and Sales Practices Litigation*, Case No. 1:23-md-03089, Document Relates to: All actions (District Court Docket No. 197), dated April 17, 2024 ............................................................... SPA-10

Amended Order Governing Initial Streamlined Consolidated Class Action Complaint and Defendants' Motion to Dismiss in Response, , *In Re: Oral Phenylephrine Marketing and Sales Practices Litigation*, Case No. 1:23-md-03089, Document Relates to: All actions (District Court Docket No. 204), dated May 16, 2024 ......................................................... SPA-13

Memorandum Decision and Order, *In Re: Oral Phenylephrine Marketing and Sales Practices Litigation,* Case No. 23-md-3089 Document Applies to: All Cases (District Court Docket No. 249), dated October 29, 2024...................................... SPA-17

Order Entering Judgment, *In Re: Oral Phenylephrine Marketing and Sales Practices Litigation*, Case No. 1:23-md-03089, Document Relates to: All Actions (District Court Docket No. 252), dated November 12, 2024 .......................... SPA-34

Memorandum Decision and Order, (Document Applies to: *Newton's Pharmacy, Inc. v. Proctor & Gamble, Co., et al.,* 23-cv-9307 (District Court Docket No. 259), dated December 16, 2024 ................................................................................. SPA-37

FILED
IN CLERK'S OFFICE
U.S. District Court E.D.N.Y.
12/6/23
BROOKLYN OFFICE

# SPA-1

### UNITED STATES JUDICIAL PANEL
### on
### MULTIDISTRICT LITIGATION

**IN RE: ORAL PHENYLEPHRINE MARKETING
AND SALES PRACTICES LITIGATION**                   MDL No. 3089

### TRANSFER ORDER

**Before the Panel:**\* Plaintiffs in one action (*Barton*) move under 28 U.S.C. § 1407 to centralize this litigation in the District of New Jersey or, alternatively, the Eastern District of New York. This litigation currently consists of eleven actions pending in seven districts, as listed on Schedules A and B.[1] The cases in this litigation primarily involve the claim that over-the-counter cough and cold medications containing phenylephrine as the active ingredient to provide decongestant relief do not work as advertised to relieve nasal congestion and are no more effective than a placebo.[2] Plaintiffs seek to recover their alleged economic losses and injunctive relief on behalf of putative nationwide and statewide classes of affected consumers. Since the filing of the motion, the Panel has been notified of 73 related actions.[3]

All responding plaintiffs and defendants support, or do not oppose, centralization of this litigation in an industrywide MDL concerning the alleged inefficacy of the above-described oral phenylephrine products, with the disagreement limited to (1) the appropriate transferee district and (2) the inclusion of cases that intend to focus exclusively on the "Maximum Strength" labeling of the products, in contrast to the efficacy of oral phenylephrine.[4] Plaintiffs in the Maximum

---

\* Judge Karen K. Caldwell and Judge David C. Norton did not participate in the decision of this matter. Additionally, one or more Panel members who could be members of the putative classes in this litigation have renounced their participation in these classes and participated in this decision.

[1] Two additional actions on the motion for centralization were voluntarily dismissed during the pendency of the motion.

[2] The products at issue include Sudafed PE, Tylenol Cold & Flu, TheraFlu, Vicks Nyquil and Dayquil Severe Cold and Flu, and various cold and flu products sold under the Mucinex, Benadryl, Alka-Seltzer Plus, and Zicam brand names. The products also include store-brand versions of similar phenylephrine-based products sold by Albertsons, Amazon.com, CVS, Costco, Harris Teeter, Kroger, Publix, Rite-Aid, Target, Walgreens, and Walmart.

[3] These and any other related actions are potential tag-along actions. *See* Panel Rules 1.1(h), 7.1 and 7.2.

[4] There currently are five "Maximum Strength" actions – the *Tuominem v. Johnson & Johnson Consumer Inc.* action on Schedule B, and four related actions brought by the same plaintiffs'

-2-
## SPA-2

Strength actions oppose inclusion of their actions, but do not oppose centralization of the other actions in this litigation. Moving plaintiffs stated at oral argument that they, too, believe the Maximum Strength actions should be excluded. As to the appropriate transferee district, plaintiffs variously request the Northern District of California, the Northern and Southern Districts of Florida, the Northern District of Illinois, the Eastern District of Louisiana, the District of Minnesota, the Western District of Missouri, the District of New Jersey, the Eastern District of New York, the Southern District of Ohio, the Eastern District of Pennsylvania, the District of Rhode Island, and the Western District of Washington.

Defendants[5] request centralization in the Southern or Eastern District of New York. Defendant Johnson & Johnson Consumer Inc. additionally argues for inclusion of the Maximum Strength actions in the MDL, focusing on the *Tuominem* action.

On the basis of the papers filed and the hearing session held, we find that the actions listed on Schedule A involve common questions of fact, and that centralization in the Eastern District of New York will serve the convenience of the parties and witnesses and promote the just and efficient conduct of this litigation. The actions on Schedule A present common factual questions arising from the allegation that defendants' oral phenylephrine products do not work as advertised to relieve nasal congestion and are no more effective than a placebo. The common factual questions include (1) whether the science supports the allegation that oral phenylephrine is not effective to relieve nasal congestion; (2) defendants' knowledge about the state of the science on the efficacy of oral phenylephrine; and (3) the measure of any damages. The actions also stem from the same regulatory proceedings, including the September 2023 determination by an advisory committee of the U.S. Food and Drug Administration that oral phenylephrine is not effective to relieve nasal congestion. Thus, the issues concerning the background science and regulatory history will be substantially the same in all actions. Furthermore, defendants state that they will assert the same preemption and primary jurisdiction defenses in all actions. Centralization will eliminate duplicative discovery; prevent inconsistent pretrial rulings; and conserve the resources of the parties, their counsel, and the judiciary.

We have determined that the Maximum Strength actions should not be included in the MDL based on statements made at oral argument by counsel representing those plaintiffs. In particular, counsel emphasized that their claims concern only the "Maximum Strength" labeling on the products named in their complaints, as opposed to claims regarding the efficacy of oral phenylephrine. They further asserted that they will not litigate the efficacy of oral phenylephrine in their actions and, importantly, that they will amend their complaints to delete the allegations that refer to the alleged inefficacy of oral phenylephrine. Given these representations by counsel, we conclude that the factual overlap between the Maximum Strength actions and the actions in the

---

counsel (*Riccio v. Pfizer Inc., Riccio v. RB Health (US) LLC, Tlaib v. Procter & Gamble*, and *Nitto v. CVS Pharmacy*), all in the Northern District of Illinois.

[5] Responding defendants are Albertson's Companies, Inc.; Amazon.com, Inc.; Associated Wholesale Grocers, Inc. together with Valu Merchandisers Company; Bayer HealthCare LLC; CVS Pharmacy, Inc.; GlaxoSmithKline Consumer Healthcare Holdings (US) LLC together with Haleon US Capital LLC; Johnson & Johnson Consumer Inc.; Pfizer, Inc.; The Procter & Gamble Company; RB Health (US) LLC (sued as Reckitt Benckiser LLC); Target Corp.; Walgreen Co.; Walmart Inc.; and Wal-Mart Stores East, LP.

-3-
# SPA-3

MDL is likely to be minimal.  We thus decline to include the Maximum Strength actions in the MDL.

We are persuaded that the Eastern District of New York is the appropriate transferee district for this MDL.  Two actions on the motion and three potential tag-along actions are pending in this district.  Plaintiffs in nineteen actions request it as their first or second choice, and defendants unanimously support this district.  Additionally, common witnesses and other relevant evidence likely will be found in or near this district given the location of several defendants' headquarters in the New Jersey and New York area.  We select Judge Brian M. Cogan as the transferee judge.  He is thoroughly familiar with the nuances of complex, multidistrict litigation by virtue of having presided over five previous MDLs, including pharmaceutical and consumer protection dockets.  Judge Cogan is an experienced jurist with the willingness and ability to efficiently manage this litigation.  We are confident that he will steer this litigation on a prudent and expeditious course.

IT IS THEREFORE ORDERED that the actions listed on Schedule A and pending outside the Eastern District of New York are transferred to the Eastern District of New York and, with the consent of that court, assigned to the Honorable Brian M. Cogan for coordinated or consolidated pretrial proceedings.

IT IS FURTHER ORDERED that transfer of the "Maximum Strength" *Tuominem* action listed on Schedule B is denied.

PANEL ON MULTIDISTRICT LITIGATION

_____

Nathaniel M. Gorton
Acting Chair

Matthew F. Kennelly                Roger T. Benitez
Dale A. Kimball                    Madeline Cox Arleo

# SPA-4

IN RE: ORAL PHENYLEPHRINE MARKETING
AND SALES PRACTICES LITIGATION                    MDL No. 3089

## SCHEDULE A

Eastern District of California

PACK, ET AL. v. JOHNSON & JOHNSON CONSUMER COMPANIES, INC.,
ET AL., C.A. No. 2:23−01965

Middle District of Florida

DEPAOLA v. THE PROCTOR & GAMBLE COMPANY, ET AL., C.A. No. 2:23−00727

Northern District of Florida

AUDELO v. JOHNSON & JOHNSON CONSUMER INC., ET AL., C.A. No. 3:23−24250

Eastern District of Louisiana

JUNEAU v. THE PROCTOR & GAMBLE COMPANY, ET AL., C.A. No. 2:23−05273
FICHERA v. THE PROCTOR & GAMBLE COMPANY, ET AL., C.A. No. 2:23−05274
COPPOCK v. THE PROCTER & GAMBLE COMPANY, ET AL., C.A. No. 2:23−05353

District of New Jersey

BARTON, ET AL. v. RB HEALTH (US) LLC, ET AL., C.A. No. 2:23−20370
MCWHITE v. JOHNSON & JOHNSON CONSUMER INC., C.A. No. 3:23−20379

Eastern District of New York

YOUSEFZADEH v. JOHNSON & JOHNSON CONSUMER INC., C.A. No. 2:23−06825
CRONIN v. JOHNSON & JOHNSON CONSUMER INC., ET AL., C.A. No. 2:23−06870

# SPA-5

**IN RE: ORAL PHENYLEPHRINE MARKETING
AND SALES PRACTICES LITIGATION**                    MDL No. 3089

**SCHEDULE B**

<u>Northern District of Illinois</u>

TUOMINEN v. JOHNSON & JOHNSON CONSUMER INC., C.A. No. 1:23−13796

A TRUE COPY ATTEST

Date: ___12/19/2023___

BRENNA B. MAHONEY, CLERK OF COURT

By: *Alisha Francis,* Deputy Clerk

**SPA-6**

Filed Date: 12/19/2023

U.S. DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
BROOKLYN OFFICE

**UNITED STATES JUDICIAL PANEL**
**on**
**MULTIDISTRICT LITIGATION**

IN RE: ORAL PHENYLEPHRINE MARKETING AND
SALES PRACTICES LITIGATION

MDL No. 3089

(SEE ATTACHED SCHEDULE)

**CONDITIONAL TRANSFER ORDER (CTO −1)**

On December 6, 2023, the Panel transferred 8 civil action(s) to the United States District Court for the Eastern District of New York for coordinated or consolidated pretrial proceedings pursuant to 28 U.S.C. § 1407. *See* _F.Supp.3d_ (J.P.M.L. 2023). Since that time, no additional action(s) have been transferred to the Eastern District of New York. With the consent of that court, all such actions have been assigned to the Honorable Brian M. Cogan.

It appears that the action(s) on this conditional transfer order involve questions of fact that are common to the actions previously transferred to the Eastern District of New York and assigned to Judge Cogan.

Pursuant to Rule 7.1 of the <u>Rules of Procedure of the United States Judicial Panel on Multidistrict Litigation</u>, the action(s) on the attached schedule are transferred under 28 U.S.C. § 1407 to the Eastern District of New York for the reasons stated in the order of December 6, 2023, and, with the consent of that court, assigned to the Honorable Brian M. Cogan.

This order does not become effective until it is filed in the Office of the Clerk of the United States District Court for the Eastern District of New York. The transmittal of this order to said Clerk shall be stayed 7 days from the entry thereof. If any party files a notice of opposition with the Clerk of the Panel within this 7−day period, the stay will be continued until further order of the Panel.

Inasmuch as no objection is
pending at this time, the
stay is lifted.

Dec 15, 2023

CLERK'S OFFICE
UNITED STATES
JUDICIAL PANEL ON
MULTIDISTRICT LITIGATION

FOR THE PANEL:

*Tiffaney D. Pete*

Tiffaney D. Pete
Clerk of the Panel

# SPA-7

IN RE: ORAL PHENYLEPHRINE MARKETING AND
SALES PRACTICES LITIGATION                                      MDL No. 3089

### SCHEDULE CTO−1 − TAG−ALONG ACTIONS

| DIST | DIV. | C.A.NO. | CASE CAPTION |
|------|------|---------|--------------|
| **ARIZONA** | | | |
| AZ | 2 | 23−02108 | Bader et al v. Johnson & Johnson Consumer Incorporated et al  1:23-cv-09253 |
| **ARKANSAS WESTERN** | | | |
| ARW | 5 | 23−05165 | Holmes v. WalMart, Inc.   1:23-cv-09255 |
| **CALIFORNIA NORTHERN** | | | |
| CAN | 3 | 23−04807 | Jones v. Reckitt Benckiser Pharmaceuticals, Inc. et al   1:23-cv-09256 |
| CAN | 3 | 23−04817 | Hernandez v. Johnson & Johnson Consumer, Inc.   1:23-cv-09257 |
| CAN | 3 | 23−04909 | Taylor et al v. Procter & Gamble Company   1:23-cv-09258 |
| CAN | 3 | 23−05466 | Hansen et al v. Walmart, Inc.   1:23-cv-09259 |
| CAN | 3 | 23−05715 | Enriquez v. The Procter & Gamble Company et al   1:23-cv-09260 |
| CAN | 4 | 23−04875 | Nelson et al v. Johnson & Johnson Consumer, Inc.et al  1:23-cv-09261 |
| CAN | 4 | 23−05128 | McPhee et al v. Johnson & Johnson Consumer Companies, Inc. et al   1:23-cv-09262 |
| CAN | 4 | 23−05367 | Flores v. Costco Wholesale Corporation   1:23-cv-09263 |
| **FLORIDA MIDDLE** | | | |
| FLM | 8 | 23−02226 | Rampalli v. Publix Super Markets, Inc.   1:23-cv-09264 |
| **FLORIDA NORTHERN** | | | |
| FLN | 3 | 23−24588 | GRIMSLEY v. RECKITT BENCKISER LLC   1:23-cv-09265 |
| FLN | 3 | 23−24628 | MORGAN v. PROCTER & GAMBLE   1:23-cv-09266 |
| **FLORIDA SOUTHERN** | | | |
| FLS | 1 | 23−23939 | Valdes v. McNeil Consumer Healthcare et al   1:23-cv-09267 |
| FLS | 1 | 23−24112 | Silva v. Reckitt Benckiser LLC et al   1:23-cv-09268 |
| **ILLINOIS NORTHERN** | | | |
| ILN | 1 | 23−13926 | NOVISKIS v. JOHNSON & JOHNSON CONSUMER INC. et al   1:23-cv-09270 |
| ILN | 1 | 23−14015 | Rampalli v. Walgreen Co.   1:23-cv-09271 |
| ILN | 1 | 23−14060 | De Priest et al v. Walgreen Co. et al   1:23-cv-09272 |

# SPA-8

| | | | | |
|---|---|---|---|---|
| ILN | 1 | 23−14155 | Cohen et al v. Walgreens Boots Alliance, Inc. | 1:23-cv-09273 |
| ILN | 1 | 23−14404 | Hsieh et al. v. Procter & Gamble Company et al. | 1:23-cv-09274 |
| ILN | 1 | 23−14558 | Derosa v. Walgreen Co. | 1:23-cv-09275 |

**ILLINOIS SOUTHERN**

| | | | | |
|---|---|---|---|---|
| ILS | 3 | 23−03494 | Means v. Johnson & Johnson Consumer Inc. | 1:23-cv-09276 |

**KANSAS**

| | | | | |
|---|---|---|---|---|
| KS | 2 | 23−02426 | Nyanjom v. Reckitt Benckiser LLC et al | 1:23-cv-09277 |
| KS | 2 | 23−02430 | Fong v. Johnson & Johnson Consumer Inc. et al | 1:23-cv-09278 |

**LOUISIANA EASTERN**

| | | | | |
|---|---|---|---|---|
| LAE | 2 | 23−05846 | Murdock et al v. RB Health (US), LLC et al | 1:23-cv-09279 |

**MARYLAND**

| | | | | |
|---|---|---|---|---|
| MD | 8 | 23−02864 | Rankin v. Harris Teeter, LLC et al | 1:23-cv-09280 |

**MINNESOTA**

| | | | | |
|---|---|---|---|---|
| MN | 0 | 23−02915 | Rampalli v. Target Corporation | 1:23-cv-09281 |
| ~~MN~~ | ~~0~~ | ~~23−03471~~ | ~~Etten v. Johnson & Johnson Consumer, Inc. et al~~ | Vacated 12/15/23 |

**MISSOURI EASTERN**

| | | | | |
|---|---|---|---|---|
| MOE | 4 | 23−01342 | Heaghney v. Johnson & Johnson Consumer Inc. et al | 1:23-cv-09282 |

**MISSOURI WESTERN**

| | | | | |
|---|---|---|---|---|
| MOW | 2 | 23−04200 | Isom v. Johnson & Johnson Consumer Inc. et al | 1:23-cv-09283 |
| MOW | 4 | 23−00663 | Walker v. Johnson & Johnson Consumer Inc. et al | 1:23-cv-09284 |
| MOW | 5 | 23−06120 | Wright v. Johnson & Johnson Consumer Inc. et al | 1:23-cv-09285 |

**NEW JERSEY**

| | | | | |
|---|---|---|---|---|
| NJ | 2 | 23−20444 | REINKRAUT v. JOHNSON & JOHNSON CONSUMER, INC. et al | 1:23-cv-09286 |
| NJ | 2 | 23−20480 | KLEIMAN v. BAYER HEALTH CARE, LLC | 1:23-cv-09287 |
| NJ | 2 | 23−20529 | SCOFFIER v. RB HEALTH (US) LLC | 1:23-cv-09288 |
| NJ | 2 | 23−20552 | STRIEGEL v. RB HEALTH (US) LLC | 1:23-cv-09289 |
| NJ | 2 | 23−20962 | PAGE v. RB HEALTH (US) LLC et al | 1:23-cv-09290 |
| NJ | 2 | 23−21051 | ADKINS et al v. RECKITT BENCKISER PHARMACEUTICALS INC. et al | 1:23-cv-09291 |
| NJ | 2 | 23−21090 | SYGAL et al v. RB HEALTH (US) LLC | 1:23-cv-09292 |
| NJ | 2 | 23−21126 | LEE et al v. THE PROCTER & GAMBLE COMPANY et al | 1:23-cv-09294 |
| NJ | 2 | 23−21163 | SANES et al v. BAYER HEALTHCARE LLC | 1:23-cv-09295 |
| NJ | 2 | 23−21276 | WILSON v. JOHNSON & JOHNSON CONSUMER, INC. et al | 1:23-cv-09296 |
| NJ | 2 | 23−21411 | JONES v. BAYER CORPORATION et al | 1:23-cv-09297 |
| NJ | 3 | 23−20478 | ROURK v. HALEON, PLC | 1:23-cv-09298 |
| NJ | 3 | 23−20551 | LAWRENCE v. JOHNSON & JOHNSON CONSUMER, INC. | 1:23-cv-09299 |
| NJ | 3 | 23−20558 | JOYNER v. JOHNSON & JOHNSON CONSUMER, INC. | 1:23-cv-09300 |

# SPA-9

| | | | |
|---|---|---|---|
| NJ | 3 | 23−20816 | Lewis et al v. JOHNSON & JOHNSON CONSUMER , INC. et al  1:23-cv-09301 |
| NJ | 3 | 23−20818 | WARD et al v. JOHNSON & JOHNSON CONSUMER INC  1:23-cv-09302 |
| NJ | 3 | 23−20895 | THOMAS et al v. KENVUE, INC. et al  1:23-cv-09303 |

**NEW MEXICO**

| | | | |
|---|---|---|---|
| NM | 1 | 23−00883 | Chavez v. Johnson & Johnson Consumer, Inc. et al  1:23-cv-09304 |

**OHIO SOUTHERN**

| | | | |
|---|---|---|---|
| OHS | 1 | 23−00590 | Kleiman v. Procter and Gamble Company  1:23-cv-09305 |
| OHS | 1 | 23−00607 | Travis v. Procter & Gamble Company et al  1:23-cv-09306 |
| OHS | 1 | 23−00613 | Newton's Pharmacy, Inc. v. Procter & Gamble Company et al  1:23-cv-09307 |
| OHS | 1 | 23−00623 | Reyes v. The Procter & Gamble Company et al  1:23-cv-09308 |
| OHS | 1 | 23−00680 | Vent v. The Procter & Gamble Company  1:23-cv-09309 |

**OREGON**

| | | | |
|---|---|---|---|
| OR | 3 | 23−01355 | Thorns et al v. Johnson & Johnson et al  1:23-cv-09310 |

**PENNSYLVANIA EASTERN**

| | | | |
|---|---|---|---|
| PAE | 2 | 23−03663 | PARKER v. RITE AID CORPORATION et al  1:23-cv-09311 |
| PAE | 2 | 23−03783 | KASPARIE et al v. BAYER HEALTHCARE LLC et al  1:23-cv-09312 |
| PAE | 2 | 23−03856 | BENJAMIN et al v. GLAXOSMITHKLINE LLC et al  1:23-cv-09313 |
| PAE | 2 | 23−03874 | EMMONS et al v. MCNEILL CONSUMER HEALTHCARE et al  1:23-cv-09314 |
| PAE | 2 | 23−03899 | ANDERSON et al v. THE PROCTER & GAMBLE COMPANY et al  1:23-cv-09315 |
| PAE | 2 | 23−04435 | CHAMBERLAIN v. JOHNSON & JOHNSON CONSUMER INC et al  1:23-cv-09316 |

**RHODE ISLAND**

| | | | |
|---|---|---|---|
| RI | 1 | 23−00403 | Emily Cohen v. CVS Pharmacy, Inc.  1:23-cv-09317 |

**SOUTH CAROLINA**

| | | | |
|---|---|---|---|
| SC | 2 | 23−04727 | Kleiman v. CVS Health Corporation  1:23-cv-09318 |

**WASHINGTON WESTERN**

| | | | |
|---|---|---|---|
| WAW | 2 | 23−01481 | Carrigan v. Johnson & Johnson et al  1:23-cv-09319 |
| WAW | 2 | 23−01606 | Thompson v. Reckitt Benckiser LLC  1:23-cv-09320 |

# SPA-10

## UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF NEW YORK

---

In re: Oral Phenylephrine Marketing and
Sales Practices Litigation

This document relates to:

All actions.

Case No. 1:23-md-03089-BMC

Hon. Brian M. Cogan

---

## [PROPOSED] ORDER GOVERNING PLAINTIFFS' INITIAL STREAMLINED CONSOLIDATED COMPLAINT AND DEFENDANTS' MOTION TO DISMISS IN RESPONSE

1.      By May 3, 2024, Interim Class Counsel will file an Initial Streamlined Consolidated Complaint under New York law alleging representative examples of the conduct and claims they allege to be at issue in this Multidistrict Litigation relating, among other things, to the marketing and labeling of oral phenylephrine products.

2.      By June 3, 2024, all named and served Defendants will file a single joint motion to dismiss raising arguments solely on preemption and/or primary jurisdiction. Plaintiffs' response will be due July 15, 2024, and Defendants' reply will be due August 5, 2024. For purposes of this motion only, the parties are excused from complying with the Court's requirement to request a pre-motion conference.

3.      Regardless of when Plaintiffs file their Full Master Consolidated Complaint, Defendants shall not be obligated to answer or otherwise respond to the Full Master Consolidated Complaint until 45 days after the Court rules on Defendants' motion to dismiss the Initial Streamlined Consolidated Complaint. For the avoidance of doubt, Defendants shall not be obligated to raise any arguments for dismissal of either the Initial Streamlined Complaint or a Full Master Consolidated Complaint with respect to any issues other than preemption and/or primary

1

Case: 24-3296, 03/26/2025, DktEntry: 91.1, Page 56 of 84
Case 1:23-md-03089-BMC Document 571 Filed 04/17/24 Page 2 of 3 PageID #: 2341

# SPA-11

jurisdiction until their deadline to answer or otherwise respond to the Full Master Consolidated Complaint, a deadline that shall be set by the Court.

4.      The Parties agree that to the extent the Court grants or denies Defendants' motion to dismiss based on preemption and/or primary jurisdiction, the order will apply to all cases in this Multidistrict Litigation or otherwise subject to transfer into this Multidistrict Litigation.

**Parties' Reservation of Rights**

5.      **Plaintiffs.**   In filing the Initial Streamlined Complaint, Plaintiffs will not be prejudiced by failure to (1) allege every single instance of the conduct they allege to be wrongful relating to the marketing and labeling of oral phenylephrine cold medicines, (2) identify all products at issue, (3) file on behalf of every named plaintiff in this litigation, or (4) refer to the laws of any state other than New York.  Plaintiffs hereby commit to filing sufficient representative examples of the conduct and claims that they allege to be wrongful that a motion to dismiss based on preemption and/or primary jurisdiction will, if such arguments prevail, resolve this litigation in its entirety, regardless of additional specific examples of wrongful conduct, additional products named, additional Plaintiff-related allegations, or additional state-law claims that are pled or could be pled in a future Full Master Consolidated Complaint.

6.      **Defendants.**   In moving to dismiss the Initial Streamlined Complaint based only on preemption and/or primary jurisdiction, Defendants will not be prejudiced by failure to raise additional arguments for dismissal under Federal Rule of Procedure 12 unrelated to preemption and/or primary jurisdiction if, in the event the Court denies the motion to dismiss based on preemption and/or primary jurisdiction, a subsequent Full Master Consolidated Complaint is filed. Plaintiffs agree that, in the event the Court denies the motion to dismiss based on preemption and/or primary jurisdiction, Defendants shall be permitted to move to dismiss any subsequent Full

# SPA-12

Master Consolidated Complaint based on any ground under Federal Rule of Civil Procedure 12(b) other than those issues that shall have already been briefed and addressed by the Court in ruling on the motion to dismiss the Initial Streamlined Complaint. Nothing about this stipulation, or the filing of any motion to dismiss the Initial Streamlined Complaint, waives any Defendants' personal jurisdiction defense.

**SO ORDERED.**

Brooklyn, NY
April 16, 2024
Dated: _____

*Brian M. Cogan*
_____
THE HONORABLE BRIAN M. COGAN
UNITED STATES DISTRICT JUDGE

3

# SPA-13

## UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re: Oral Phenylephrine Marketing and Sales Practices Litigation<br><br>This document relates to:<br><br>All actions. | Case No. 1:23-md-03089-BMC<br><br>Hon. Brian M. Cogan |

## [PROPOSED] AMENDED ORDER GOVERNING INITIAL STREAMLINED CONSOLIDATED CLASS ACTION COMPLAINT AND DEFENDANTS' MOTION TO DISMISS IN RESPONSE

1.      Pursuant to the parties' previously-filed [Proposed] Order Governing Plaintiffs' Initial Streamlined Consolidated Complaint and Defendants' Motion to Dismiss in Response (ECF No. 196-1) and the Court's related Order of April 17, 2024 (ECF No. 197), the parties and the Court agreed Plaintiffs would "file an Initial Streamlined Consolidated Complaint under New York law alleging representative examples of the conduct and claims they allege to be at issue in this multidistrict litigation relating, among other things, to the marketing and labeling of oral phenylephrine products."

2.      The parties and the Court also agreed that, by June 3, 2024, all named and served Defendants will "file a single joint motion to dismiss raising arguments solely on preemption and/or primary jurisdiction."

3.      On May 3, 2024, Interim Class Counsel filed the Intitial [sic] Streamlined Consolidated Class Action Complaint (the "Initial Streamlined Complaint") (ECF No. 200), alleging representative examples of the conduct and claims they allege to be at issue in this multidistrict litigation relating, among other things, to the marketing and labeling of oral phenylephrine products.  Plaintiffs included, for the first time in any complaint filed in this multidistrict litigation, a federal RICO claim against the "RICO Defendants" (ECF No. 200 at Count 7).  This claim is governed by federal law, not New York

1

# SPA-14

law.

4.      In light of Plaintiffs' inclusion of the new federal RICO claim, the parties now agree that, in addition to defenses of preemption and/or primary jurisdiction outlined in the parties' prior stipulation (ECF No. 196) and the Court's corresponding Order (ECF No. 197), Defendants are also permitted to raise in their forthcoming Motion to Dismiss certain arguments responsive to the RICO claim (hereinafter "initial RICO arguments").

5.      Plaintiffs' response will be due July 15, 2024, and Defendants' reply will be due August 5, 2024.  For purposes of this motion only, the parties are excused from complying with the Court's requirement to request a pre-motion conference.

6.      Regardless of when Plaintiffs file their Full Master Consolidated Complaint, Defendants shall not be obligated to answer or otherwise respond to the Full Master Consolidated Complaint until 45 days after the Court rules on Defendants' motion to dismiss the Initial Streamlined Complaint.  For the avoidance of doubt, Defendants shall not be obligated to raise any arguments for dismissal of either the Initial Streamlined Complaint or a Full Master Consolidated Complaint with respect to any issues other than preemption and/or primary jurisdiction and/or initial RICO arguments until their deadline to answer or otherwise respond to the Full Master Consolidated Complaint, a deadline that shall be set by the Court.

7.      The Parties agree that to the extent the Court grants or denies Defendants' motion to dismiss based on preemption and/or primary jurisdiction and/or any initial RICO argument(s) raised, the order will apply to all cases in this multidistrict litigation or otherwise subject to transfer into this multidistrict litigation.

**Parties' Reservation of Rights**

**8.      Plaintiffs.**  In filing the Initial Streamlined Complaint, Plaintiffs will not be prejudiced

# SPA-15

by failure to (1) allege every single instance of the conduct they allege to be wrongful relating to the marketing and labeling of oral phenylephrine cold medicines, (2) identify all products at issue, (3) file on behalf of every named plaintiff in this litigation, or (4) refer to the laws of any state other than New York.  Plaintiffs hereby represent that they have filed sufficient representative examples of the conduct and claims that they allege to be wrongful that a motion to dismiss based on preemption and/or primary jurisdiction and/or initial RICO arguments will, if such arguments prevail, resolve this litigation in its entirety, regardless of additional specific examples of wrongful conduct, additional products named, additional Plaintiff-related allegations, or additional state-law claims that are pled or could be pled in a future Full Master Consolidated Complaint.

9.     **Defendants.**  In moving to dismiss the Initial Streamlined Complaint based only on preemption and/or primary jurisdiction and/or initial RICO arguments, Defendants will not be prejudiced by failure to raise additional arguments for dismissal under Federal Rule of Procedure 12 unrelated to preemption and/or primary jurisdiction and/or the initial RICO arguments if, in the event the Court denies the motion to dismiss based on preemption and/or primary jurisdiction and/or initial RICO arguments, a subsequent Full Master Consolidated Complaint is filed.  Plaintiffs agree that, in the event the Court denies the motion to dismiss based on preemption and/or primary jurisdiction and/or initial RICO arguments, Defendants shall be permitted to move to dismiss any cause of action set forth in the subsequent Full Master Consolidated Complaint based on any defense under Federal Rule of Civil Procedure 12(b) that has not already been briefed and addressed by the Court in ruling on the motion to dismiss the Initial Streamlined Complaint.  Nothing about this stipulation, or the filing of any motion to dismiss the Initial Streamlined Complaint, waives any Defendants' personal jurisdiction defense.

3

# SPA-16

**SO ORDERED.**

Dated: May 16, 2024

*Brian M. Cogan*
_____
THE HONORABLE BRIAN M. COGAN
UNITED STATES DISTRICT JUDGE

4

# SPA-17

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
---------------------------------------------------------------- X
                                                                 :
                                                                 :
IN RE: ORAL PHENYLEPHRINE MARKETING         :
AND SALES PRACTICES LITIGATION              :
_____        :   23-md-3089-BMC
                                                                 :
                                                                 :
THIS DOCUMENT APPLIES TO:                    :   **<u>MEMORANDUM DECISION AND</u>**
                                                                 :   **<u>ORDER</u>**
ALL CASES                                                   :
                                                                 :
---------------------------------------------------------------- X

**COGAN**, District Judge.

Before the Court is defendants' motion to dismiss plaintiffs' Initial Streamlined

Consolidated New York Bellwether Class Action complaint. Plaintiffs bring nearly one hundred

cases, consolidated in this multidistrict litigation, against defendant retailers and manufacturers

of over the counter ("OTC") cough and cold medicines containing the drug phenylephrine

("PE"). Plaintiffs, purchasers of these medicines, allege that defendants knew that PE was

ineffective as a nasal and sinus decongestant but produced, marketed, and sold products

containing PE to consumers anyway.

The parties agreed that plaintiffs would file this streamlined complaint, and defendants

would move to dismiss it, to test claims and defenses common across the consolidated cases. As

its title suggests, the complaint brings various claims under New York state law, as well as a

civil Racketeer Influenced and Corrupt Organizations Act ("RICO") claim. Defendants contend

that the state claims are preempted by the Federal Food, Drug, and Cosmetic Act (the "FDCA"),

that plaintiffs lack standing to assert the RICO claim, and that the RICO claim is precluded by

the FDCA. For the reasons set forth below, defendants' motion is granted.

# SPA-18

## SUMMARY OF STREAMLINED COMPLAINT

The Food and Drug Administration (the "FDA") has approved PE as a "safe and effective" nasal decongestant since 1985. In 2007, three individuals petitioned the FDA to increase the allowed maximum dose of PE because a meta-analysis of existing studies indicated that, at the current dosage level, PE was likely no better than a placebo. The FDA's Nonprescription Drug Advisory Committee ("NDAC") reviewed the petition but, finding further study was needed, did not recommend that the FDA declassify PE as "safe and effective" or change any regulations governing the labeling and dosage of PE products.

Around this time, plaintiffs allege, a group of manufacturers – Bayer Healthcare LLC, Haleon PLC, Haleon U.S. Holdings L.L.C., Perrigo Company, Proctor & Gamble Co., RB Health LLC, Kenvue, Inc., and Johnson & Johnson (the "RICO defendants") – began to associate with one another, including through the Phenylephrine Task Group of the Consumer Healthcare Products Association, to defend the effectiveness of PE. Plaintiffs allege that the task group provided deliberately misleading submissions to the NDAC on multiple occasions and disseminated similarly misleading information to the public in the form of press releases, studies, and surveys.

Based on studies conducted after 2007, plaintiffs assert that "by 2016, there was no doubt that oral phenylephrine is no better than placebo at relieving congestion," and defendants knew it. Indeed, in 2023, the NDAC found that scientific data did not support the use of PE as a decongestant. Despite these developments, with one exception, defendants have continued to manufacture, market, and sell PE products without change. Defendant Johnson & Johnson added a message on its website next to pictures of all its PE products stating that the NDAC had

# SPA-19

reviewed the efficacy of PE and linking the FDA's statement. Yet Johnson & Johnson, like the

other defendants, continues to market and sell PE products.

Plaintiffs allege that they relied on defendants' representations regarding the products'

efficacy and would have paid significantly less, or would not have purchased the products at all,

had they been aware of PE's ineffectiveness. Plaintiffs also seek to represent several different

classes made up of individuals who, between 2016 and the present, purchased an oral nasal

decongestant containing PE manufactured by defendants.

## DISCUSSION

### I.    Standard of Review

 "To survive a motion to dismiss, a complaint must contain sufficient factual matter,

accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556

U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). A

plaintiff must allege "factual content that allows the court to draw the reasonable inference that

the defendant is liable for the misconduct alleged." Id. (cleaned up).

### II.    State Law Claims

The streamlined complaint asserts state claims under New York's consumer-protection

and false-advertising statutes, the New York commercial code, and New York common law.

Because the claims are all expressly preempted, I need not reach defendants' implied- and

obstacle-preemption arguments.

#### A.    Legal Framework

##### i.    Preemption

The Supremacy Clause dictates that "the Laws of the United States . . . shall be the

supreme Law of the Land . . . any Thing in the Constitution or Laws of any state to the Contrary

# SPA-20

notwithstanding." U.S. Const. Art. VI, cl. 2. As a corollary, when "state and federal law directly conflict," federal law preempts state law. PLIVA, Inc. v. Mensing, 564 U.S. 604, 617 (2011). The Supreme Court has recognized various types of preemption, but "all of them work in the same way: Congress enacts a law that imposes restrictions or confers rights on private actors; a state law confers rights or imposes restrictions that conflict with the federal law; and therefore the federal law takes precedence and the state law is preempted." N.J. Thoroughbred Horsemen's Ass'n v. Nat'l Collegiate Athletic Ass'n, 584 U.S. 453, 477 (2018).

Whether a federal law preempts a state law is a question of Congressional intent. If Congress is silent, courts presume that Congress did not intend to displace state law, and litigants can rebut that presumption in only limited circumstances. Wyeth v. Levine, 555 U.S. 555, 575 (575). For instance, a litigant can demonstrate "impossibility" preemption by showing that it is impossible to comply with both state and federal law. See PLIVA, 564 U.S. at 617. Sometimes, though, Congress explicitly states its intention for certain federal law to preempt state law. In these cases of "express preemption," there is no presumption against preemption because Congress has spoken clearly. Puerto Rico v. Franklin Cal. Tax-Free Tr., 579 U.S. 115, 125 (2016). An express preemption clause often preempts state law that extends beyond federal law in any respect, meaning that federal law acts as a floor and a ceiling for state requirements. See Riegel v. Medtronic, 552 U.S. 312, 316 (2008).

The FDCA selectively employs this form of express preemption. Generally, state law may supplement the FDCA so long as there is no direct conflict between the state and federal regulations. But, in certain areas, Congress sought to create a "uniform – and federally-led – regulatory scheme." Critcher v. L'Oreal USA, Inc., 959 F.3d 31, 38 (2d Cir. 2020). To do so, it inserted various preemption clauses throughout the statute. See, e.g., Riegel, 552 U.S. at 316.

4

# SPA-21

OTC drug labeling is one such area. The applicable preemption clause, aptly titled

"National uniformity for nonprescription drugs," provides that "no State or political subdivision

of a State may establish or continue in effect any requirement . . . that is different from or in

addition to, or that is otherwise not identical with, a requirement under" the FDCA's OTC drug

provisions. 21 U.S.C. § 379r. The parties do not dispute the import of § 379r: that outside of

some enumerated exceptions, a state OTC drug labeling requirement is preempted if it expands

upon or dilutes federal law – or, in short, that state law must parallel federal law. Plaintiffs also

do not argue that their claims fall within § 379r's "savings clause," which exempts from the

express preemption "any action or the liability of any person under the product liability law of

any State." Id. § 379r(e). Whether the state claims are preempted therefore turns on whether

they would enforce a requirement different the federal OTC drug labelling requirements.

## ii. Federal OTC Drug Regulations

Congress enacted the FDCA in the early twentieth century to address "concern[s] about

unsafe drugs and fraudulent marketing." Wyeth v. Levine, 555 U.S. 555, 556 (2009). The

FDCA empowers the FDA to carry out this task, requiring that "[n]o drug can enter interstate

commerce 'unless [the] FDA determines that it is generally recognized as safe and effective . . .

for the particular use described in its product labeling.'" In re Acetaminophen - ASD-ADHD

Prod. Liab. Litig., No. 22-md-3042, 2022 WL 17348351, at *3 (S.D.N.Y. Nov. 14, 2022)

(quoting Nat. Res. Def. Council, Inc. v. FDA, 710 F.3d 71, 75 (2d Cir. 2013)).

The FDA uses two systems to determine whether OTC drugs are safe and effective: the

New Drug Application ("NDA") system, and the monograph system. The NDA system operates

precisely how it sounds. A drug manufacturer submits an NDA to the FDA; the FDA reviews

# SPA-22

the application; and if the FDA is satisfied that the new drug is safe and effective for the uses on the label, it approves the drug.

The monograph system provides a more streamlined route. For certain OTC drugs, the FDA issues a regulation – a monograph – detailing "the FDA-approved active ingredients . . . and . . . the conditions under which each active ingredient is" safe and effective. Nat. Res. Def. Council, 710 F.3d at 75. A manufacturer can sell an OTC drug without individualized FDA review when the drug and its label conform to the monograph. An OTC drug distributed under a monograph "is generally recognized as safe and effective and is not misbranded if it meets each of the conditions contained" in the general regulation applicable to all OTC drug monographs, 21 C.F.R. § 330.1, "and each of the conditions contained in any applicable monograph." Id. Each monograph regulates four types of information – the statement of identity, which describes "the general pharmacological category(ies) of the drug or the principal intended action(s) of the drug," id. § 201.61(b); indications for use, which explain the effects of the drug; warnings; and directions – and provides sample language for each.

## B. Mislabeling Claims

To determine whether plaintiffs' claims are preempted, I must first determine the scope of the state duties plaintiffs seek to enforce. See Mut. Pharm. Co. v. Bartlett, 570 U.S. 472, 480 (2013). I begin with the claims plaintiffs admit are predicated entirely on defendants' labels before addressing what remains.

The complaint contains broad allegations that defendants misled consumers by labelling their PE products as nasal decongestants despite knowing that PE was no more than a placebo, but plaintiffs' brief drastically cabins their labeling claims. Plaintiffs target only the "indications" section of the labels, which state that PE was an effective nasal decongestant.

# SPA-23

They argue that defendants should have updated their indications to "truthfully describ[e] PE products' efficacy," although they never clarify whether that means simply removing the indications, or updating the indications to state that PE is an ineffective decongestant. Regardless, this circumscribed duty has no coordinate in federal law.

Both the PE monograph and the general monograph regulation give manufacturers some flexibility in describing the indications of a PE product. The PE monograph allows manufacturers to use a "phrase listed in paragraph (b)(1) of this section," – either "For the temporary relief of nasal congestion" or "Temporarily relieves nasal congestion." – "as appropriate."[1] Id. § 341.80(b). But it also allows manufacturers to use alternative language instead:

> Other truthful and nonmisleading statements, *describing only the indications for use that have been established and listed in paragraphs (b)(1) and (b)(2) of this section*, may also be used, as provided in § 330.1(c)(2) of this chapter, subject to the provisions of section 502 of the Federal Food, Drug, and Cosmetic Act (the act) relating to misbranding and the prohibition in section 301(d) of the act against the introduction or delivery for introduction into interstate commerce of unapproved new drugs in violation of section 505(a) of the act.

Id. § 341.80(b) (emphasis added). The general monograph regulation is structured similarly. In addition to requiring that "[t]he product is labeled in compliance with chapter V" of the FDCA, id. § 330.1(c)(1), it provides that

> [t]he "Uses" section of the label and labeling of the product shall contain the labeling describing the "Indications" that have been established in an applicable OTC drug monograph *or alternative truthful and nonmisleading statements describing only those indications for use that have been established in an applicable monograph*, subject to the provisions of section 502 of the act relating to misbranding . . . .

Id. § 330.1(c)(2) (emphasis added).

---

[1] Manufacturers may add additional phrases listed in subsection (b)(2), such as "for the temporary relief of nasal stuffiness." Id. 341.80(b)(2).

# SPA-24

The text's plain meaning is clear that manufacturers must include "indications" on their labels, and they may do so in one of two ways: either by using the monograph language or using truthful and non-misleading statements describing the monograph language. Nothing in the PE monograph or the general monograph suggests that manufacturers have a freestanding duty to update their indications in response to new scientific information. Indeed, it's unclear if manufacturers could do so here without misbranding the product: if they updated the "Uses" section to indicate that PE is not an effective nasal decongestant, they would be using "alternative language describing" exactly the opposite of "those indications for use that have been established in the applicable OTC drug monograph."

If the text was not enough, this interpretation is confirmed by the 1986 Final Rule adding the relevant sections of the general monograph regulation. Before the Rule, the FDA followed an "exclusivity policy" for OTC drug labeling, under which "any OTC drug product containing labeling with claims or representations other than those established in the monograph, or using differing terminology, would have been a new drug and/or misbranded." Labeling of Drug Products for Over-the-Counter Human Use, 51 Fed. Reg. 16258-01, 16258. The 1986 amendments discarded this practice in favor of the current "flexibility policy." Id. The new policy, the Rule stated, "allow[s] manufacturers the opportunity to change label information without complying with unnecessary FDA procedures; . . . provide[s] for regional differences in the way people refer to the same condition, e.g., acid stomach versus upset stomach; and . . . provide[s] greater flexibility." Id.

The Rule does not suggest that the new language imposes some *obligation* on manufacturers to update efficacy claims on OTC drug labels; instead, the FDA merely touted the efficiency gained by allowing manufacturers to tweak the monograph language. And the Rule

8

# SPA-25

even sheds light on the phrase "subject to section 502 of the act relating to misbranding."

Throughout the notice-and-comment process, many interested parties criticized the flexibility

policy as "a license for manufacturers of OTC drug products to use words that are misleading

and confusing." Id. at 16259. The FDA seemingly included the "subject to . . ." proviso to allay

these fears, not to impose on manufacturers a duty to update their drugs' indications.

 As they must, plaintiffs oppose this reading of the text. They first point out that,

crediting their allegations, PE is no more effective than a placebo. Thus, to the extent that

defendants used alternative language describing the monograph indications, they violated the

monograph because that language was not "truthful and nonmisleading." 21 C.F.R. 330.1(c)(2).

Plaintiffs even claim that labels using the monograph language itself were misbranded because

the FDCA's misbranding provision prohibits labels that are "false or misleading in any

particular," 21 U.S.C. § 352(a), and the general monograph regulation requires that a label

comply with chapter V of the FDCA, which includes § 352. See 21 C.F.R. § 330.1(c)(1).

 This interpretation is strained. Most obviously, whether a drug is "effective" is a term of

art under the FDCA, and the statute empowers the FDA, not manufacturers, to make that

determination. See Nat. Res. Def. Council, 710 F.3d at 75. So, even taking plaintiffs'

allegations as true, nothing on the labels was false or misleading – unless and until the FDA

amends the monograph in response to the NDAC's findings, it is not misleading to state that PE

is an effective nasal decongestant.[2] Plaintiffs also do not explain why federal law would require

defendants to update only the indications section. Indeed, such a result would be nonsensical.

As plaintiffs recognize, the FDA regulations straightforwardly require a manufacturer to use the

"statement of identity" listed in the monograph, meaning a manufacturer must label a PE product

---

[2] The same applies to the statements on some labels that the products were "maximum strength" or suited for "severe" symptoms. Those statements are only false and misleading if PE is ineffective.

# SPA-26

as a "nasal decongestant." 21 C.F.R. § 341.80(a) ("The labeling of the product . . . identifies the product as a 'nasal decongestant.'"); see also id. § 330.1 ("[T]he statement of identity of the product *shall* be the term or phrase used in the applicable OTC drug monograph established in this part." (emphasis added)). Under plaintiffs' reading of the regulations, PE manufacturers would still be allowed to sell products labelled as "nasal decongestants," so long as the products' labels do not state that the products are effective.

Further still, the Second Circuit already rejected a near-identical argument in Critcher v L'Oreal USA Inc., 959 F.3d 31 (2d Cir. 2020). The court there dismissed state claims alleging that a manufacturer mislabeled one of its liquid cosmetics products by failing to disclose that consumers could not dispense all the liquid. The plaintiffs admitted that an express preemption clause applied and that the cosmetic's label complied with the FDA's specific labelling requirements, but they argued that the manufacturer violated § 352(a) because the net weight on the label was misleading. The Second Circuit rejected the proposition that § 352 was a vehicle through which states could impose additional labeling requirements on products regulated by the FDCA. It recognized that because "[t]he [FDA] regulations have . . . stated, with specificity, what information is necessary to avoid misleading consumers," a cosmetic in compliance with the FDA labeling regulations cannot be misbranded.

Critcher rests on a straightforward application of administrative law. The FDCA generally commands that a drug's label cannot be false or misleading and, in turn, vests authority in the FDA to determine whether a label is false or misleading. And, so long as there is an applicable preemption clause, that authority is exclusive. Here, by promulgating the monograph regulation, the FDA determined that it is neither false nor misleading to represent that PE is an effective decongestant. Cf. Booker v. E.T. Browne Drug Co., No. 20-cv-03166, 2021 WL

# SPA-27

4340489, at *7 (S.D.N.Y. Sept. 23, 2021) (finding no preemption where the drugs were not deemed effective by the FDA).

Yet plaintiffs attempt to do exactly what <u>Critcher</u> prohibited. They attempt to circumvent the Second Circuit's holding by arguing that, unlike the labeling regulations in <u>Critcher</u>, the PE monograph expressly incorporates the rule they seek to enforce. But, as explained above, their argument is completely divorced from the text of the regulations, which does not reference any duty to revise indications based on newly discovered scientific information. And for good reason. The FDCA empowers the FDA, not drug manufacturers, to determine whether a drug is effective.[3]

Of course, the FDCA imposes some duties on drug manufacturers that depend on newly acquired scientific information. For instance, the misbranding statute requires a manufacturer to "pull even an FDA-approved drug" from the market when the drug "is 'dangerous to health' even if 'used in the dosage or manner, or with the frequency or duration prescribed, recommended, or suggested in the labeling thereof.'" <u>Bartlett</u>, 570 U.S. at 477 n.4 (quoting 21 U.S.C. § 352(j)). There is no similar provision in § 352 for ineffective drugs.

Similarly, the savings clause in § 379r(e) imposes limited state labeling obligations on manufacturers. For this reason, the cases cited by plaintiff that allow state law challenges to OTC drug labels are inapposite. <u>See, e.g.</u>, <u>Wyeth v. Levine</u>, 555 U.S. 555 (2009); <u>In re Acetaminophen</u>, 2022 WL 17348351. In both cases, the plaintiffs alleged that the label misrepresented whether a drug was safe for use and asserted state tort claims against the manufacturers. Because § 379r(e) exempts product liability law from the preemption clause, the

---

[3] This same rationale applies to drugs approved under an NDA, like Haleon's PE product. The FDA determined that the drug was not misbranded, and there is no apparent federal duty to update labels. Indeed, plaintiffs even admit that Haleon "can," not must, update its products' indications through the Changes Being Effected regulation. <u>See</u> 21 C.F.R. § 314.70(c)(6)(iii)(D).

# SPA-28

plaintiffs' claims were preempted only if compliance with both state and federal law was impossible. Wyeth, 555 U.S. at 563; In re Acetaminophen, 2022 WL 1734835, at *6-7. And it was not – the FDCA contains many provisions allowing manufacturers to "strengthen" the warnings on their label. See, e.g., 21 C.F.R. §§ 314.70(c)(6)(iii)(A), (C) (applicable to the OTC drugs approved under an NDA in Wyeth) and § 201.63 (applicable to the OTC drugs approved under a monograph in In re Acetaminophen).[4] This distinction between safety- and efficacy-focused state law was an intentional legislative choice. By excepting state product-liability law from express preemption in § 379r(e), Congress allowed states to layer additional state protections atop federal ones, but only when those protections relate to safety; whether a drug is effective remains within the exclusive purview of the FDA. This division reflects a balance between twin aims of the FDCA: safety and uniformity.

Plaintiffs' final alternative argument fails for this same reason. Plaintiffs argue that, even if defendants' drugs were otherwise properly labeled, the FDCA imposes "an independent obligation to update their labels to reflect new scientific information." In support, they cite passages from three Supreme Court cases – Wyeth, Albrecht, and Bartlett. See Merck Sharp & Dohme Corp. v. Albrecht, 587 U.S. 299, 303 (2019); Bartlett, 570 U.S. at 487; Wyeth, 555 U.S. at 571. In those cases, the Court dealt with safety challenges, not efficacy challenges, and therefore was determining whether a manufacturer *could* update their labels to reflect new scientific information under federal law, not whether they *had to* update their labels. Indeed,

---

[4] Nor do I find merit in plaintiffs' appeal to In re Zantac (Ranitidine) Prod. Liab. Litig., 546 F. Supp. 3d 1284 (S.D. Fla. 2021). To plaintiffs' credit, the court in In re Zantac, unlike in Wyeth and In re Acetaminophen, held that certain misbranding claims were parallel to federal law not preempted by § 379r. Id. at 1305. But the claims there were focused on the warnings of an OTC drug, not the indications, and therefore do not run into the same structural and textual problems as plaintiffs' claims. See id. Further, the ruling was preliminary – the court held that defendants could later demonstrate preemption after argument on "state-specific matters." Id. at 1309. Perhaps most importantly, though, the court did not have to grapple with circuit precedent like Critcher; if it did, I do not see how it could have reached the same conclusion.

# SPA-29

plaintiffs reveal their hand by cobbling together quotations from <u>Wyeth</u> to argue that a manufacturer must update its label to reflect new scientific information so the drug's labelling "remain[s] adequate as long as the drug is on the market." <u>Wyeth</u>, 555 U.S. at 571. <u>Wyeth</u> in fact says that the FDCA charges manufacturers "both with crafting an adequate label and ensuring that its *warnings* remain adequate as long as the drug is on the market." <u>Id.</u> (emphasis added). The full passage reaffirms the key flaw with plaintiffs' claims: because the state claims focus on efficacy, not safety, they run headlong into § 379r.

### C.   Remaining Claims

Plaintiffs attempt to save their false-advertising, false-concealment, and express-warranty claims claims from § 379r by arguing that they do not implicate federal labeling requirements. Like with the mislabeling claims, I must first determine the scope of the state duties plaintiffs seek to enforce. <u>See</u> <u>Bartlett</u>, 570 U.S. at 480. Because each duty would have required defendants to update the labels of their PE products or stop selling the products altogether, the claims are preempted.

Crediting plaintiffs' allegations, defendants could not have advertised their products truthfully without updating the labels to disclaim PE's effectiveness. <u>See</u> <u>Smith v. GlaxoSmithKline Consumer Healthcare Holdings (US) LLC</u>, 660 F. Supp. 3d 863, 873-74 (N.D. Cal. 2023); <u>Kuiper v. American Cyanamid Co.</u>, 131 F.3d 656, 662 (7th Cir. 1997). The same is true for the false-concealment and express-warranty claims. Although plaintiffs point to omissions outside of the label which they claim constitute false concealments and statements outside of the label which they claim constitute express warranties, defendants would have had to update their label to avoid liability under either theory. And, despite plaintiffs' arguments to the contrary, New York considers purely economic express-warranty claims to arise out of

13

# SPA-30

contract law, not product-liability law.  See Goldstein v. Walmart, Inc., 637 F. Supp. 3d 95, 113

n.7 (S.D.N.Y. 2022); Restatement (Third) of Torts: Prod. Liab. § 21 (1998).  Accordingly,

plaintiffs' state claims are preempted in their entirety.

### III.    RICO Claim

In addition to their state law claims, plaintiffs allege that the RICO defendants violated

RICO by engaging in numerous acts of mail and wire fraud in furtherance of a scheme to defraud

the public and mislead the FDA into believing that PE is an effective decongestant.  Defendants

move to dismiss plaintiffs' civil RICO claim for lack of statutory standing and preclusion by the

FDCA.

"Courts have described civil RICO as an unusually potent weapon – the litigation

equivalent of a thermonuclear device."  Moss v. BMO Harris Bank, N.A., 258 F. Supp. 3d 289,

297 (E.D.N.Y. 2017) (internal quotation marks and quotation omitted).  The "mere assertion of a

RICO claim has an almost inevitable stigmatizing effect on those named as defendants," yet

"plaintiffs wielding RICO almost always miss the mark."  Id. (cleaned up).  Plaintiffs here are no

exception.  As indirect purchasers of the PE products, they lack standing to bring a RICO claim.[5]

The Supreme Court, in interpreting federal antitrust law, has applied a "direct purchaser"

rule: a standing doctrine that bars downstream indirect purchasers from bringing an antitrust

claim.  See Ill. Brick Co. v. Illinois, 431 U.S. 720 (1977).  "[I]ndirect purchasers who are two or

more steps removed from the antitrust violator in a distribution chain may not sue.  By contrast,

direct purchasers – that is, those who are 'the immediate buyers from the alleged antitrust

violators' – may sue."  Apple Inc. v. Pepper, 587 U.S. 273, 280 (2019) (quoting Kansas v.

UtiliCorp United Inc., 497 U.S. 199, 207 (1990)).  Plaintiffs do not dispute that they are indirect

---

[5] Because plaintiffs lack standing, I need not reach preclusion.

14

# SPA-31

purchasers; the question for this Court is whether the direct-purchaser rule applies to civil RICO claims.

Although the Supreme Court and Second Circuit have not directly addressed the issue, the Supreme Court has explained that Congress, in enacting the RICO statute with the same language used in antitrust legislation, "intended [the words in the RICO statute] to have the same meaning that courts had already given them" in the antitrust context. Holmes v. Sec. Inv. Prot. Corp., 503 U.S. 258, 268 (1992). Thus, the same standing requirements established in antitrust cases apply to RICO cases. See id.; McCarthy v. Recordex Serv., Inc., 80 F.3d 842, 855 (3d Cir. 1996) ("[A]ntitrust standing principles apply equally to allegations of RICO violations." (citing Holmes, 503 U.S. at 270)). This is no less true for the direct-purchaser requirement. The direct-purchaser requirement applies in the civil RICO context and bars plaintiffs' RICO claim.[6]

The Supreme Court's analysis in Sedima, S.P.R.L. v. Imrex Co., 473 U.S. 479 (1985), does not change the application of the direct-purchaser requirement in the context of civil RICO claims. Sedima did not apply the "antitrust injury" rule to a civil RICO case, but that was "because 'RICO injury' would be an unintelligible requirement, not because there is no parallel between the two statutes." Carter, 777 F.2d at 1176 (citing Sedima, 473 U.S. at 489 & n.8). Where an antitrust standing requirement is easily intelligible in the civil RICO context, such as

---

[6] "Every circuit to have considered the issue has held that the [direct purchaser] rule also applies to civil RICO actions, and that indirect purchasers therefore do not have standing to assert RICO claims." Humana, Inc. v. Biogen, Inc., 666 F. Supp. 3d 135, 141 (D. Mass. 2023), reconsideration denied, No. 21-cv-11578, 2023 WL 8374584 (D. Mass. Dec. 4, 2023). The Sixth, Third, and Seventh Circuit Courts of Appeals have all applied the direct-purchaser rule to civil RICO claims. See Trollinger v. Tyson Foods, Inc., 370 F.3d 602, 616 (6th Cir. 2004) ("[I]ndirect purchasers lack standing under RICO and the antitrust laws to sue for overcharges passed on to them by middlemen." (citations omitted)); McCarthy, 80 F.3d at 855 (3d Cir. 1996) ("The precepts taught by Illinois Brick and Utilicorp apply to RICO claims, thereby denying RICO standing to indirect victims." (citations omitted)); Carter v. Berger, 777 F.2d 1173 (7th Cir. 1985) ("The Hanover Shoe-Illinois Brick [direct purchaser] rule promotes enforcement and therefore applies to RICO, too.").

# SPA-32

with the bright-line rule at issue here, the identical language of the statutes dictates that courts apply the same requirement in both contexts.

The proximate-cause requirement for a plaintiff to proceed with a civil RICO claim, recognized by the Supreme Court and the Second Circuit, does not conflict with the direct-purchaser requirement. These requirements "address two analytically distinct aspects" of standing. McCarthy, 80 F.3d at 851 n.14.[7] Proximate-cause analysis concerns whether a plaintiff's injury is too far removed from the defendant's violation of the statute at issue to warrant a remedy. Id. By contrast, the direct-purchaser rule concerns whether a plaintiff, having satisfied the proximate-cause requirement, "falls within the group of private attorneys general that Congress created to enforce" the statute. Id. (internal quotation marks and quotation omitted). Many cases only address the proximate-cause requirement, and not the direct-purchaser requirement, because there is no purchasing relationship at issue between the parties. See, e.g., Bridge v. Phoenix Bond & Indem. Co., 553 U.S. 639 (2008) (competitors sued petitioner for violating the rules of an auction; no buyer-seller relationship); Empire Merchs., LLC v. Reliable Churchill LLLP, 902 F.3d 132 (2d Cir. 2018) (alcohol distributor sued other distributors for conspiring with retail liquor stores to smuggle liquor from Maryland to New York; no buyer-seller relationship). Other cases do not address the direct-purchaser requirement because the plaintiff is clearly a direct purchaser, vitiating the need for such analysis. See, e.g., Horn v. Med. Marijuana, Inc., 80 F. 4th 130, 133 (2d Cir. 2023) (plaintiff purchased a product undisputably "produced, marketed, and sold by [defendants]"), cert. granted, 144 S. Ct. 1454

---

[7] Alternatively, some courts have explained that proximate cause analysis is completely separate from the question of standing. See, e.g., Trollinger, 370 F.3d at 612 (6th Cir. 2004) ("Like the antitrust laws, RICO's civil-suit provision imposes two distinct but overlapping limitations on claimants – standing and proximate cause. . . . Proximate cause poses a merits question involving common-law and prudential limitations on the consequences for which the law will hold a defendant accountable, regardless of the plaintiff's standing to sue." (citation omitted)). The role of proximate cause in relation to the question of standing does not affect the analysis here.

# SPA-33

(2024). Plaintiffs' argument that the direct-purchaser requirement would usurp the proximate cause standard is not supported by the caselaw. Applying the direct-purchaser rule to plaintiffs' civil RICO claim, I dismiss plaintiffs' claim for lack of standing.

## CONCLUSION

For the foregoing reasons, defendants' motion to dismiss the streamlined complaint is GRANTED.

**SO ORDERED.**

*Brian M. Cogan*
_____
U.S.D.J.

Dated: Brooklyn, New York
       October 29, 2024

# SPA-34

## UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF NEW YORK

---

In re: Oral Phenylephrine Marketing and
Sales Practices Litigation

This document relates to:

All actions.

Case No. 1:23-md-03089-BMC

Hon. Brian M. Cogan

---

## ORDER ENTERING JUDGMENT

**WHEREAS,** on May 3, 2024, Interim Class Counsel filed "an Initial Streamlined Consolidated Complaint under New York law alleging representative examples of the conduct and claims they allege to be at issue in this Multidistrict Litigation relating, among other things, to the marketing and labeling of oral phenylephrine products." ECF No. 197 at 1.

**WHEREAS,** the parties agreed and the Court ordered "that to the extent the Court grants or denies Defendants' motion to dismiss based on preemption and/or primary jurisdiction and/or any initial RICO argument(s) raised, the order will apply to all cases in this multidistrict litigation or otherwise subject to transfer into this multidistrict litigation." ECF No. 204 at 2.

**WHEREAS,** Plaintiffs also "represent[ed] that they have filed sufficient representative examples of the conduct and claims that they allege to be wrongful that a motion to dismiss based on preemption and/or primary jurisdiction and/or initial RICO arguments will, if such arguments prevail, resolve this litigation in its entirety, regardless of additional specific examples of wrongful conduct, additional products named, additional Plaintiff-related allegations, or additional state-law claims that are pled or could be pled in a future Full Master Consolidated Complaint." ECF No. 204 at 3.

**WHEREAS,** on June 3, 2024, Defendants moved to dismiss Plaintiffs' Initial Streamlined Consolidated Class Action Complaint based on arguments that (i) Plaintiffs' state claims are

1

# SPA-35

preempted by the Federal Food, Drug, and Cosmetic Act ("FDCA"), (ii) Plaintiffs lack standing to assert the RICO claim, and (iii) Plaintiffs' RICO claim is precluded by the FDCA.  ECF No. 212.

**WHEREAS,** on July 15, 2024, Plaintiffs filed their Opposition to Defendants' Motion to Dismiss.  ECF No. 225.

**WHEREAS,** on August 5, 2024, Defendants filed their Reply Memorandum in support of their Motion to Dismiss.  ECF No. 232.

**WHEREAS,** on September 23, 2024, the Court held oral argument on Defendants' Motion to Dismiss.  9/26/24 Minute Entry.

**WHEREAS,** on October 29, 2024, the Court issued a Memorandum Decision and Order, granting Defendants' Motion to Dismiss the Streamlined Complaint.  ECF No. 249.

**THEREFORE, it is hereby ORDERED, ADJUDGED, AND DECREED as follows:**

1.    All claims in the complaints transferred into the above-captioned master docket are dismissed with prejudice.

2.    The Clerk is instructed to enter JUDGMENT dismissing all claims in any complaint in this multidistrict litigation.

3.    This is a final, appealable judgment that resolves all of the claims in all of the cases in this multidistrict litigation.[1]

4.    The in-person Status Conference currently scheduled for 1:00 p.m. ET on November 21, 2024, is hereby adjourned.

---

[1]    The Court has not decided, and Defendants have expressly preserved, any issues related to "any Defendants' personal jurisdiction defense."  ECF No. 204 at 3.

2

# SPA-36

**SO ORDERED.**

Brooklyn, NY

Dated:  November 12, 2024

*Brian M. Cogan*
_____
THE HONORABLE BRIAN M. COGAN
UNITED STATES DISTRICT JUDGE

# SPA-37

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------- X
                                  :

IN RE: ORAL PHENYLEPHRINE MARKETING :
AND SALES PRACTICES LITIGATION         :
_____ :   23-md-3089-BMC
                                  :

THIS DOCUMENT APPLIES TO:       :   **MEMORANDUM DECISION AND**
                                  :   **ORDER**
Newton's Pharmacy, Inc. v. Proctor & Gamble Co., :
_et al._, 23-cv-9307                        :
                                  :
                                  :
------------------------------------------------------------- X

**COGAN**, District Judge.

      Plaintiff Newton's Pharmacy, Inc., ("NPI") has moved for reconsideration of the Court's dismissal of its Lanham Act claim. Reasoning that the Court's order dismissing the initial streamlined complaint does not apply to federal false-advertising claims, NPI seeks a remand of its claim to the Southern District of Ohio.

      NPI's motion, however, misses the mark. Of course its claim was not included in streamlined complaint – most claims in the consolidated action weren't. But, as stipulated by the Plaintiff's Executive Committee, the selected claims in the complaint turned on threshold issues common to the entire action, such that its dismissal would "resolve this litigation in its entirety, regardless of additional specific examples of wrongful conduct." Trademark infringement arising out of the same facts as alleged in the streamlined complaint is quintessentially an "additional specific example of wrongful conduct." And NPI does not contest the Committee's authority to propose such a disposition.

      Nor could it. An April 2024 text order empowered the Committee to "enter into stipulations with Defendants' counsel[,] . . . [n]egotiat[e] settlement with Defendants' counsel,"

# SPA-38

and "[p]erform such other duties as are necessary in connection with the prosecution of" the

litigation. As a result, the order granted the Committee the ability to make stipulations relating

to each claim in the consolidated action, including NPI's Lanham Act claim. The Committee

therefore acted well within when its authority when it stipulated on behalf of all plaintiffs that

any claim *not* included in the complaint, like NPI's Lanham Act claim, would nevertheless fall if

the Court granted defendants' motion to dismiss.

NPI's reconsideration motion is, in effect, a far too belated challenge to this stipulation.

But Rule 60(b) is not a vehicle for raising arguments or issues that could have been raised before

judgment. See Levitant v. Workers Comp. Bd. of N.Y., No. 16-cv-6990, 2019 WL 5853438, at

*1 (S.D.N.Y. Nov. 8, 2019). If NPI thought its federal claim should survive a dismissal of the

streamlined complaint, it should have told the Committee, or even the Court, much earlier.[1]

NPI's argument that its claim is immune from the Court's reasoning reveals only NPI's failure to

communicate with the Committee.

It's not like the streamlined complaint was a product of some clandestine scheme; the

complaint's purpose was repeatedly discussed at status conferences and on the public docket.

For instance, in its Order Governing Plaintiffs' Initial Streamlined Consolidated Complaint and

Defendants' Motion To Dismiss In Response, the Court explicitly provided that the complaint

should include

---

[1] Even if the Lanham Act claim was included in the Streamlined Complaint, it likely would not have survived a motion to dismiss. The Supreme Court has made clear that a Lanham Act suit is precluded when it is "inconsistent" with an agency's "policy judgment." POM Wonderful LLC v. Coca-Cola Co., 573 U.S. 102, 120 (2014); see also Geier v. Am. Honda Motor Co., 529 U.S. 861 (2000). Like the plaintiff's suit in Geier, NPI's suit attacks an agency's policy determination – the FDA's determination that phenylphrine is an effective nasal decongestant. Although the Second Circuit has held that a Lanham Act false-advertising claim can challenge information on a drug's label that "renders [an] advertisement literally or implicitly false," even when the FDA has approved the label, see Church & Dwight Co. v. SPD Swiss Precision Diagnostics, GmBH, 843 F.3d 48, 73 n.13 (2d Cir. 2016) (quoting Apotex Inc. v. Acorda Therapeutics, Inc., 823 F.3d 51, 64 n.10 (2d Cir. 2016), Congress straightforwardly delegated the exclusive authority to determine whether a drug is effective to the FDA, and it was therefore not "false" to state that oral phenylephrine is an effective nasal decongestant.

# SPA-39

sufficient representative examples of the conduct and claims that [plaintiffs]
allege to be wrongful that *a motion to dismiss based on preemption . . . will, if
such arguments prevail, resolve this litigation in its entirety, regardless of
additional specific examples of wrongful conduct*, additional products named,
additional Plaintiff-related allegations, or additional state-law claims that are pled
or could be pled in a future Full Master Consolidated Complaint.

(emphasis added).

There is no discernible reason why NPI did not raise this objection until after the Court
entered the proposed judgment.  It sat idly by while the parties moved for, and the Court
ultimately appointed, lead counsel for the plaintiffs.  It stayed silent as the parties discussed their
plan for the streamlined complaint and as the Court entered a public order reflecting those
discussions.  Then, when the Committee opted not to include a Lanham Act claim in the
streamlined complaint, it did not bring up the issue with the Court or with the Committee.   And
it remained silent still thorough the entire two-week period between the Court's dismissal of the
complaint and the filing of the proposed judgment.  Even the filing of the proposed judgment did
not prompt NPI to object.  It waited another week, four days after the Court entered the
judgment, to finally speak up.

NPI had numerous opportunities to object, to seek a carve-out for its claim, or to at least
attempt to reserve its rights to assert that claim.  If it had, and its position had any merit, either
the committee would have changed its tack, or the Court would have heard NPI's position prior
to ruling on the motion.  Because it did not, NPI has not shown that it is entitled to the
extraordinary relief afforded by Rule 60(b).  Accordingly, its motion is denied.

**SO ORDERED.**

*Brian M. Cogan*
_____
U.S.D.J.

Dated: Brooklyn, New York
      December 13, 2024