# 24-3296(L)

## 25-119(CON)

IN THE

# United States Court of Appeals for the Second Circuit

NEWTON'S PHARMACY, INC.,

*Plaintiff-Appellant,*

v.

PROCTER & GAMBLE COMPANY, *et al.*,

*Defendants-Appellees,*

Appeal from the United States District Court
for the Eastern District of New York

### RESPONSE BRIEF FOR DEFENDANTS-APPELLEES

Andrew Soukup
David M. Zionts
Victoria Stilwell
COVINGTON & BURLING LLP
One City Center
850 Tenth Street, NW
Washington, D.C. 20001
(202) 662-6000

*Attorneys for Defendant-Appellee
The Procter & Gamble Company*

Jessica L. Ellsworth
HOGAN LOVELLS US LLP
555 Thirteenth Street, N.W.
Washington, D.C. 20004
(202) 637-5886
jessica.ellsworth@hoganlovells.com

James L. Bernard
HOGAN LOVELLS US LLP
390 Madison Avenue
New York, NY 10017
(212) 918-3121

Lauren S. Colton
HOGAN LOVELLS US LLP
100 International Drive, Suite 200
Baltimore, MD 21202
(410) 659-2733

*Attorneys for Defendant-Appellee
RB Health (US) LLC*

*Additional Counsel Listed on Inside Cover*

Hannah Y. Chanoine
Bruce Crawford
O'MELVENY & MYERS LLP
1301 Avenue of the Americas
Suite 1700
New York, NY 10019
(212) 326-2000

Amy J. Laurendeau
O'MELVENY & MYERS LLP
610 Newport Center Drive, 17th Floor
Newport Beach, CA 92660
(949) 823-6900

Jason Zarrow
O'MELVENY & MYERS LLP
400 South Hope Street, 19th Floor
Los Angeles, CA 90071
(213) 430-6000

*Attorneys for Defendant-Appellee*
*Johnson & Johnson Consumer Inc.*

Jay P. Lefkowitz, P.C.
Jacob M. Rae
KIRKLAND & ELLIS LLP
601 Lexington Avenue
New York, NY 10022
(212) 446-4800

Robyn E. Bladow
KIRKLAND & ELLIS LLP
555 S. Flower Street
Los Angeles, CA 90071
(213) 680-8400

Cole Carter
KIRKLAND & ELLIS LLP
333 West Wolf Point Plaza
Chicago, IL 60654
(312) 862-1951

*Attorneys for Defendant-Appellee*
*Haleon US Holdings LLC*

# CORPORATE DISCLOSURE STATEMENT

Pursuant to Federal Rule of Appellate Procedure 26.1,

Defendant-Appellee Haleon US Holdings LLC hereby states that:

1.    Haleon US Holdings LLC is a wholly owned subsidiary of Haleon US Holdings Inc.

2.    Haleon US Holdings Inc. is a wholly owned subsidiary of Haleon UK Holdings (No.2) Limited.

3.    Haleon UK Holdings (No.2) Limited is a 75.38% majority owned subsidiary of Haleon UK Holdings Limited. The remaining 24.62% is owned by Haleon Intermediate Holdings Limited.

4.    Haleon UK Holdings Limited is a wholly owned subsidiary of Haleon Intermediate Holdings Limited.

5.    Haleon Intermediate Holdings Limited is a wholly owned subsidiary of Haleon plc.

Defendant-Appellee The Procter & Gamble Company ("P&G") hereby states that P&G is a publicly traded company. P&G has no parent corporation, and no publicly traded corporation owns 10% or more of its stock.

Defendant-Appellee RB Health (US) LLC hereby states that RB Health (US) LLC is a wholly-owned subsidiary of Mead Johnson Nutrition Company. Mead Johnson Nutrition Company is an indirect wholly-owned subsidiary of Reckitt

Benckiser Group plc. No publicly held corporation holds 10% or more of Reckitt Benckiser Group plc's stock.

Defendant-Appellee Johnson & Johnson Consumer Inc. ("JJCI") hereby states that JJCI is a direct, wholly owned subsidiary of JNTL Holdings 2, Inc., and JNTL Holdings 2, Inc. is a direct, wholly owned subsidiary of Kenvue Inc., a publicly traded corporation. Kenvue Inc. has no parent corporation, and no corporation owns 10 percent or more of its stock.[1]

---

[1] JJCI recently underwent a statutory conversion to Kenvue Brands LLC pursuant to section 18-214 of Delaware's Limited Liability Company Act. JJCI has been conferring with opposing counsel regarding substitution and intends to move to substitute JJCI for Kenvue Brands LLC as Defendant-Appellee in this appeal. Kenvue Brands LLC will file a corporate disclosure when the forthcoming motion to substitute is filed.

# TABLE OF CONTENTS

Page

CORPORATE DISCLOSURE STATEMENT .........................................................i

TABLE OF AUTHORITIES ...............................................................................v

INTRODUCTION ..............................................................................................1

STATEMENT OF THE CASE..............................................................................2

I.     FACTUAL BACKGROUND ...................................................................2

       A.     FDA Approves Phenylephrine as a Decongestant and
              Issues Labeling Regulations, Which Congress Later
              Endorses ..........................................................................2

       B.     The Nonprescription Drugs Advisory Committee
              Analyzes the Effectiveness of Phenylephrine, but the
              FDA Does Not Change the Monograph..........................................3

       C.     Nearly 100 Putative Class Actions Are Consolidated in
              This MDL...........................................................................5

II.    PROCEDURAL BACKGROUND ...........................................................6

       A.     Newton's Supports Centralization of its Case in an MDL ..............6

       B.     Newton's Empowers Plaintiffs' Executive Committee to
              Act on its Behalf.................................................................7

       C.     Plaintiffs Stipulate That Dismissal of the Streamlined
              Complaint Would Resolve All Claims in the MDL........................7

       D.     Subsequent Proceedings, Including an Amended
              Stipulated Order, Reinforce the Parties' Agreement That
              Dismissal of the Streamlined Complaint Will Resolve All
              Claims in the MDL................................................................9

       E.     The District Court Dismisses the Streamlined Complaint
              and Plaintiffs Consent to Defendants' Proposed
              Judgment Dismissing All Claims in the MDL.............................12

# TABLE OF CONTENTS—Continued

Page

F.    Newton's Seeks, and the District Court Denies, Relief from Final Judgment ........................................................ 14

SUMMARY OF ARGUMENT ............................................................... 16

STANDARD OF REVIEW .................................................................... 18

ARGUMENT ........................................................................................ 19

I.    THE DISTRICT COURT DID NOT ABUSE ITS DISCRETION BY DENYING THE MOTION FOR RELIEF FROM FINAL JUDGMENT ................................................. 19

    A.    Newton's Rule 60(b)(1) Challenge Is Meritless ............................ 19

    B.    Newton's Rule 60(b)(6) Challenge Is Meritless ............................ 26

II.    THE COURT MAY AFFIRM FOR THE INDEPENDENT REASON THAT RELIEF FROM FINAL JUDGMENT WOULD NOT ALTER THE OUTCOME ............................................. 31

CONCLUSION ..................................................................................... 36

CERTIFICATE OF COMPLIANCE

CERTIFICATE OF SERVICE

# TABLE OF AUTHORITIES

Page(s)

**CASES:**

*Andrulonis v. United States*,
  26 F.3d 1224 (2d Cir. 1994) ................................................27

*Apotex Inc. v. Acorda Therapeutics, Inc.*,
  823 F.3d 51 (2d Cir. 2016) ...........................................2, 32, 35

*Beijing Neu Cloud Oriental Sys. Tech. Co. v. Int'l Bus. Machines Corp.*,
  110 F.4th 106 (2d Cir. 2024) ................................................19

*Biden v. Nebraska*,
  600 U.S. 477 (2023) .........................................................21

*Carroll v. Trump*,
  124 F.4th 140 (2d Cir. 2024) ................................................19

*Church & Dwight Co. v. SPD Swiss Precision Diagnostics, GmbH*,
  843 F.3d 48 (2d Cir. 2016) ....................................32, 33, 34, 35

*Corning Glass Works v. Sumitomo Electric U.S.A., Inc.*,
  683 F. Supp. 979 (S.D.N.Y. 1988) ...........................................29

*DeMarkey v. Greenwich Hosp. Ass'n*,
  454 F. Supp. 351 (D. Conn. 1978) .......................................31, 35

*Foman v. Davis*,
  371 U.S. 178 (1962) .........................................................30

*Johnson v. Univ. of Rochester Med. Ctr.*,
  642 F.3d 121 (2d Cir. 2011) ................................................18

*Kozlowski v. Coughlin*,
  871 F.2d 241 (2d Cir. 1989) ................................................27

*Mandala v. NTT Data, Inc.*,
  88 F.4th 353 (2023) .........................................................30

Page(s)

*Meehan v. Snow*,
652 F.2d 274 (2d Cir. 1981) ...............................................30

*Nat. Res. Def. Council, Inc. v. U.S. Food & Drug Admin.*,
710 F.3d 71 (2d Cir. 2013) ....................................................3

*Nemaizer v. Baker*,
793 F.2d 58 (2d Cir. 1986) ........................................*passim*

*NLRB v. SW General, Inc.*,
580 U.S. 288 (2017)...............................................................21

*POM Wonderful LLC v. Coca-Cola Co.*,
573 U.S. 102 (2014)........................................................33, 34

*Shrader v. CSX Transp., Inc.*,
70 F.3d 255 (2d Cir. 1995) ..............................................16, 31

*United States v. Bank of New York*,
14 F.3d 756 (2d Cir. 1994) ...................................................18

*United States v. Int'l Brotherhood of Teamsters*,
247 F.3d 370 (2d Cir. 2001) .................................................18

*Williams v. Citigroup Inc.*,
659 F.3d 208 (2d Cir. 2011) ................................................30

**STATUTES:**

15 U.S.C. § 1125(a) .................................................................32

21 U.S.C. § 355h(a)(1)(A)(i) ......................................................3

21 U.S.C. § 355h(b)(1)(A)(ii) .....................................................3

21 U.S.C. § 355h(b)(1)(B)(ii) .....................................................3

21 U.S.C. § 379r.....................................................................13

28 U.S.C. § 1407.......................................................................5

# TABLE OF AUTHORITIES—Continued

Page(s)

Coronavirus Aid, Relief, and Economic Security Act, Pub. L. No. 116-136, § 3851, 134 Stat. 281, 435 (2020) .................................................. 3

**REGULATIONS:**

21 C.F.R. § 341.80 ................................................................ 2, 18, 32

21 C.F.R. § 341.80(a) ................................................................ 2

21 C.F.R. § 341.80(b) ................................................................ 3

21 C.F.R. § 341.80(b)(1) ................................................................ 2

21 C.F.R. § 341.80(b)(2) ................................................................ 3

59 Fed. Reg. 43,386 (Aug. 23, 1994) ....................................... 2

**RULES:**

Fed. R. Civ. P. 15(a)(2) ................................................................ 30

Fed. R. Civ. P. 60(b)(1) ........................................................... 16, 19

Fed. R. Civ. P. 60(b)(6) ........................................................... 17, 26

**OTHER AUTHORITIES:**

Antonin Scalia & Bryan A. Garner, *Reading Law: The Interpretation of Legal Texts* (2012) ..................................................... 20, 21

U.S. Food & Drug Admin., *FDA Proposes Ending Use of Oral Phenylephrine as OTC Monograph Nasal Decongestant Active Ingredient After Extensive Review* (Nov. 7, 2024), *available at* https://perma.cc/CS9Q-VRRW ................................................. 4

U.S. Food & Drug Admin., *NDAC Briefing Document: Oral Phenylephrine in the CCBA Monograph* (Sept. 2023), *available at* https://tinyurl.com/2dk7248p .................................................. 4

U.S. Food & Drug Admin., *Nonprescription Drugs Advisory Committee* (Dec. 10, 2024), *available at* https://tinyurl.com/2s439zwk ............................. 3, 4

Page(s)

U.S. Food & Drug Admin., *The Current Status of Oral Phenylephrine as a Nasal Decongestant* (Mar. 19, 2024), *available at* https://tinyurl.com/2jwfsh8m ...............................................................................5

## INTRODUCTION

Relief from a final judgment under Federal Rule of Civil Procedure 60(b) is a break-glass measure used sparingly to correct true mistakes or to avoid undue hardship. There is no mistake or undue hardship here.

This appeal arises out of a stipulated case management order governing a multidistrict litigation (MDL). Newton's Pharmacy Inc. (Newton's) was a willing participant in that multidistrict litigation, and it now seeks to be released from the terms of the stipulated order because it resulted in dismissal of all its claims. However, as this Court held in another Rule 60(b) case, "[t]he legal consequences of a stipulation incorporated in a court order may not be undone simply because, with the benefit of hindsight, stipulating turns out to have been an unfortunate tactic." *Nemaizer v. Baker*, 793 F.2d 58, 59-60 (2d Cir. 1986). Even if Newton's did not originally intend for the stipulated order to govern its claims, it had ample opportunity to clarify as much—and it remained silent at every turn. Newton's only objection to the impact of the stipulated order came *after* judgment was already entered against it. The district court did not abuse its discretion by rejecting Newton's belated effort to escape the consequences of its litigation decisions.

Even if relief under Rule 60(b) were otherwise proper (it is not), Newton's has failed to plausibly allege a meritorious claim for relief. The claim that Newton's seeks to preserve is for false advertising under the Lanham Act. This Court has made

clear that a Lanham Act claim may not be premised on disagreement with efficacy determinations made by the Food and Drug Administration (FDA). *Apotex Inc. v. Acorda Therapeutics, Inc.*, 823 F.3d 51, 64 (2d Cir. 2016). Yet that is precisely what Newton's Lanham Act claim would do. That fact independently doomed Newton's motion for relief under Rule 60(b). This Court should affirm.

## STATEMENT OF THE CASE

A more detailed statement of the case is set forth in the brief of Defendants-Appellees in No. 24-3296 (consolidated with this appeal) and is incorporated by reference into this brief. The statement below provides the information most relevant to this appeal.

## I. FACTUAL BACKGROUND

### A. FDA Approves Phenylephrine as a Decongestant and Issues Labeling Regulations, Which Congress Later Endorses.

Defendants produce over-the-counter cough and cold medicines containing the drug phenylephrine. FDA has approved phenylephrine as a "safe and effective" nasal decongestant. *See* 59 Fed. Reg. 43,386, 43,408 (Aug. 23, 1994). FDA has also promulgated specific dosage, warning, and labeling regulations for products containing phenylephrine. *See id.* at 43,409-12 (codified at 21 C.F.R. § 341.80). Among other things, the label must "identif[y] the product as a 'nasal decongestant' " and state that it is "[f]or the temporary relief of nasal congestion" or that it "[t]emporarily relieves nasal congestion." 21 C.F.R. § 341.80(a), (b)(1). The label

"may" contain additional statements about the drug's efficacy, such as "For the temporary relief of [a] stuffy nose," "Decongests . . . nasal passages," and "Temporarily restores freer breathing through the nose." *Id.* § 341.80(b)(2). But any alternative descriptors must "describ[e] only the indications for use" that FDA has approved, *id.* § 341.80(b)—here, nasal decongestion.

Congress endorsed these regulations in 2020 by enacting the Coronavirus Aid, Relief, and Economic Security Act, Pub. L. No. 116-136, § 3851, 134 Stat. 281, 435 (2020). Congress converted FDA's existing regulations—which were called "monographs," *see Nat. Res. Def. Council, Inc. v. U.S. Food & Drug Admin.*, 710 F.3d 71, 75 (2d Cir. 2013)—to administrative orders and reaffirmed that drugs marketed in compliance with monographs are "deemed to be generally recognized as safe and effective." 21 U.S.C. § 355h(a)(1)(A)(i). Like monographs, administrative orders "determin[e] whether there are conditions under which" a drug is "generally recognized as safe and effective." *Id.* § 355h(b)(1)(A)(ii). Covered medicines must be marketed "in conformity with an administrative order." *Id.* § 355h(b)(1)(B)(ii).

**B.    The Nonprescription Drugs Advisory Committee Analyzes the Effectiveness of Phenylephrine, but the FDA Does Not Change the Monograph.**

The Nonprescription Drugs Advisory Committee is an independent entity that provides non-binding advice to FDA. *See* U.S. Food & Drug Admin., *Nonprescription Drugs Advisory Committee* (Dec. 10, 2024), *available at*

https://tinyurl.com/2s439zwk.  The Advisory Committee met in 2007 to discuss studies suggesting phenylephrine might be ineffective at current dosing levels.  *See* U.S. Food & Drug Admin., *NDAC Briefing Document: Oral Phenylephrine in the CCBA Monograph*, at 23 (Sept. 2023), *available at* https://tinyurl.com/2dk7248p. After reviewing the available evidence, the Advisory Committee voted that further study was warranted to confirm that phenylephrine was effective at current dosages. *Id*. at 30.  FDA made no changes to the governing labeling regulations.

The Advisory Committee met again in September of 2023 to discuss scientific data generated since the 2007 recommendation and concluded that the new data did not support a finding that current dosages of orally administered phenylephrine are effective as a nasal decongestant.  *Id*. at 8.  The Committee's non-binding report left Defendants' labeling obligations unchanged.

FDA subsequently made clear that "companies may continue to market [over-the-counter] monograph drug products containing oral phenylephrine as a nasal decongestant."  U.S. Food & Drug Admin., *FDA Proposes Ending Use of Oral Phenylephrine as OTC Monograph Nasal Decongestant Active Ingredient After Extensive Review* (Nov. 7, 2024), *available at* https://perma.cc/CS9Q-VRRW.  "Only a final order will affect what products can be marketed," at which point FDA "would provide manufacturers with appropriate time to either reformulate drugs containing oral phenylephrine or remove such drugs from the market."  *Id*.  As an FDA official

reaffirmed, "the status of oral phenylephrine products remains the same—they are considered generally recognized as safe and effective as [over-the-counter] nasal decongestants." U.S. Food & Drug Admin., *The Current Status of Oral Phenylephrine as a Nasal Decongestant*, at 7:22-7:37 (Mar. 19, 2024), *available at* https://tinyurl.com/2jwfsh8m.

### C.     Nearly 100 Putative Class Actions Are Consolidated in This MDL.

Plaintiffs around the country nonetheless seized on the 2023 Advisory Committee report to initiate nearly 100 putative class actions contending that Defendants knew phenylephrine medications were ineffective as nasal decongestants but produced, marketed, and sold phenylephrine-containing products as nasal decongestants anyway. A-131-132; *see also* SPA-17[2] ("Plaintiffs bring nearly one hundred cases."). Several Plaintiffs moved the United States Judicial Panel on Multidistrict Litigation (JPML) for centralization under 28 U.S.C. § 1407. SPA-1. Noting that "[a]ll responding plaintiffs and defendants support, or do not oppose, centralization of this litigation in an industrywide MDL," the JPML transferred all cases to the Eastern District of New York for coordinated pretrial proceedings. *Id*. The panel

---

[2] All "A-" references in this brief refer to Newton's Appendix. *See* Dkt. No. 24-3296, ECF Nos. 92-93, 95, 97-99. All "SPA-" references in this brief refer to Newton's Special Appendix. *See* Dkt. No. 24-3296, ECF No. 91. All "NPSA-" references in this brief refer to the Defendants-Appellees' supplemental appendix filed contemporaneously herewith.

assigned the MDL to Judge Brian M. Cogan to "steer this litigation on a prudent and expeditious course." SPA-3.

## II. PROCEDURAL BACKGROUND

### A. Newton's Supports Centralization of its Case in an MDL.

Newton's originally brought suit in the Southern District of Ohio on behalf of itself and a putative class of similarly situated entities. NPSA-1. Like other Plaintiffs, Newton's asserted various state-law claims alleging that Defendants misrepresented the efficacy of phenylephrine-containing medications when marketing and selling their products. NPSA-17-19, NPSA-21-24. But Newton's complaint also raised a claim—unique to Newton's—of false advertising under the federal Lanham Act based on the same alleged misrepresentations. NPSA-19-21.

Newton's sought to join the MDL, acknowledging that centralization of its case was "useful, necessary, and supported by numerous [common] questions of fact and law." *See* Interested Party Response of Plaintiffs Tiffany Travis and Newton's Pharmacy, ECF No. 219 at 1, *In re Oral Phenylephrine Mktg. & Sales Pracs. Litig.*, MDL No. 3089 (JPML Oct. 25, 2023). The JPML thus transferred Newton's case to the MDL as a tag-along action. *See* SPA-6, SPA-9.

At no point in the centralization process did Newton's assert that it or its claims should be treated differently from other Plaintiffs or their claims.

### B. Newton's Empowers Plaintiffs' Executive Committee to Act on its Behalf.

The district court initiated MDL proceedings by directing the parties to seek consensus on whether lead counsel should be appointed. NPSA-28-29. Plaintiffs responded with a "[c]onsensus" motion to appoint an Executive Committee and interim class counsel. NPSA-31. Plaintiffs touted that their proposed leadership structure would "allow them to efficiently and effectively prosecute this class action litigation *on behalf of all Plaintiffs* and absent Class members, speaking in one voice *on behalf of all of them*." NPSA-37 (emphases added).

The district court granted the motion, empowering the Executive Committee to "[e]nter[] into stipulations with Defendants' counsel, . . . [n]egotiat[e] settlement with Defendants' counsel," and "[p]erform[] such other duties as are necessary in connection with the prosecution of" the litigation. NPSA-65.

Unlike other plaintiffs, who sought appointment of additional lead counsel, *see* NPSA-69-72, NPSA-74-81, Newton's did not challenge the proposed leadership structure.

### C. Plaintiffs Stipulate That Dismissal of the Streamlined Complaint Would Resolve All Claims in the MDL.

Plaintiffs, through the Executive Committee, set the course of these proceedings at the very first MDL hearing. Plaintiffs proposed that, in lieu of a master complaint containing all claims of all Plaintiffs consolidated in the MDL, the court

should allow Plaintiffs to file a "skinny complaint" containing representative claims. A-1158:6-16. Defendants were open to streamlining the proceedings but expressed concern about piecemeal litigation. A-1159:21-1160:7. Evidently sharing that concern, the district court warned Plaintiffs that if they "go with" a skinny complaint they must "commit to it." A-1160:8-9. Plaintiffs would not be permitted to pivot to other claims to keep the litigation alive following dismissal of the skinny complaint. A-1160:8-16. That would "defeat[] the purpose." A-1160:13-14. Permitting the assertion of additional claims after dismissal of the proposed skinny complaint would put the parties and the court "at just as long a schedule as having a master consolidated complaint with a full exposition." A-116:14-16.

Plaintiffs then stipulated that they would file an "initial streamlined consolidated complaint under New York law alleging representative examples of the conduct and claims they allege to be at issue in this Multidistrict Litigation." NPSA-89 (capitalization altered). Because the parties anticipated that only state-law claims would be at issue, Defendants agreed to file a joint motion to dismiss raising solely "preemption and/or primary jurisdiction." *Id.* Moreover, because success on those defenses would be fatal to all state-law claims in the MDL—not just the New York claims included in the streamlined complaint—and to assuage the district court's and Defendants' reservations about piecemeal litigation, Plaintiffs stipulated that the streamlined complaint would contain "sufficient representative examples of the

conduct and claims that they allege to be wrongful that" dismissal of all claims in the streamlined complaint would "resolve this litigation in its entirety." NPSA-90. And Plaintiffs further "agree[d] that to the extent the Court grants or denies Defendants' motion to dismiss . . . the order will apply to all cases in this Multidistrict Litigation or otherwise subject to transfer into this Multidistrict Litigation." *Id.*; *see also* NPSA-89 (caption designating that the stipulation relates to "[a]ll actions" in the MDL).

Newton's did not object to the stipulation, which the district court adopted without change. *See* SPA-10-12.

### D. Subsequent Proceedings, Including an Amended Stipulated Order, Reinforce the Parties' Agreement That Dismissal of the Streamlined Complaint Will Resolve All Claims in the MDL.

Plaintiffs filed their streamlined complaint on May 3, 2024. *See* Dist. Ct. MDL Dkt., ECF No. 200. The streamlined complaint did not include a Lanham Act claim. Once again, Newton's did not object.

The streamlined complaint did, however, contain an unanticipated federal-law claim for violations of RICO. That was the first time a RICO claim had been injected into the litigation—none of the individual complaints in the MDL included a RICO claim. SPA-13. Because the original stipulated order contemplated that the streamlined complaint would include only state-law claims, *see* SPA-10, the parties jointly proposed amendments to the stipulated order to account for the new federal-law

claim.  *See* NPSA-100 ("In light of Plaintiffs' inclusion of the new RICO claim, the parties now agree that, in addition to defenses of preemption and/or primary jurisdiction . . . Defendants are also permitted to raise . . . arguments responsive to the RICO claim.").  Plaintiffs repeated their agreement that the streamlined complaint pleaded "representative examples of the conduct and claims they allege to be at issue in this multidistrict litigation relating, among other things, to the marketing and labeling of oral phenylephrine products."  *Id.*  And Plaintiffs again stipulated that Defendants' threshold defenses, if successful, would "resolve this litigation in its entirety," and that the district court's ruling on the motion to dismiss would "apply to all cases in this multidistrict litigation."  NPSA-100-101.

Newton's did not object to the amended stipulated order, which the district court again adopted in full.  SPA-13-16.

Defendants moved to dismiss the streamlined complaint on June 3, 2024.  NPSA-114-152.  As briefing on the motion continued, a parallel series of status conferences indicated that the parties and the district court were on the same page about the purpose and effect of the streamlined complaint.

The parties discussed, for example, the appropriate timeline for discovery.  The outcome of those discussions—that the parties would wait until resolution of the motion to dismiss before embarking on full-blown discovery—was premised on the shared understanding that dismissal of the streamlined complaint would render

the entire litigation "moot." NPSA-177:9. Moreover, when asked whether the court would enter a scheduling order after ruling on the motion to dismiss, the district court reminded Plaintiffs' counsel not to be "presumptuous" because a scheduling order would be necessary only "to the extent that the case remains alive." NPSA-174:9-16; *see also* NPSA-174:17 (Plaintiffs' counsel responding, "Oh, no, of course, Your honor"). And when addressing the timetable for the filing of a potential master complaint, Defendants' counsel pointed out that a master complaint would be needed only "[t]o the extent anything survives the motion to dismiss." NPSA-175:23-24. To avoid the inefficiency of proceeding on a master complaint that might soon be rendered obsolete, the district court decided to "put it off" and "see what is there after the motion to dismiss." NPSA-176:7-10.

These exchanges prompted no objection or request for clarification from Newton's.

Plaintiffs ultimately asked the district court to order discovery to proceed because they were "confident that their claims w[ould] survive" the motion to dismiss the streamlined complaint. NPSA-105. Defendants disagreed, reminding Plaintiffs that "the purpose of the streamlined complaint was to focus the parties' and [the district court's] efforts on case-dispositive defenses that, if granted, would end the litigation before the parties and the [court] are burdened with unnecessary discovery." NPSA-106. The district court eventually deemed it appropriate to "get

discovery moving" in case "some portion of the consolidated complaint survives the motion." NPSA-158:6-10. But the district court did not question the underlying premise that should the motion to dismiss be granted, the case would be over.

Once again, Newton's did not object to the district court's instructions, nor did Newton's take any other steps to reserve its rights.

Finally, in the hearing on the motion to dismiss, the district court ended the proceedings by remarking on the need for "a deadline for a master consolidated complaint *in the event* I do not totally dismiss." NPSA-231:3-5 (emphasis added). Then, in declining to finalize the discovery schedule until after resolution of the motion to dismiss, the court reiterated that the "idea" of the streamlined complaint was "to tee-up the threshold issues here that might convince the parties the case is going forward or not going forward." NPSA-235:14-16.

Yet again, Newton's did not object, nor did it take any other steps to reserve its rights.

### E. The District Court Dismisses the Streamlined Complaint and Plaintiffs Consent to Defendants' Proposed Judgment Dismissing All Claims in the MDL.

The district court dismissed the streamlined complaint in full. SPA-17-33. The order disposed of Plaintiffs' state-law claims under the express preemption clause in the Federal Food, Drug, and Cosmetic Act (FDCA), which provides that "no State or political subdivision of a State may establish or continue in effect any

requirement" with respect to over-the-counter drugs "that is . . . not identical with" the requirements of the FDCA.  SPA-21 (quoting 21 U.S.C. § 379r).  Because the FDCA and accompanying regulations require Defendants to label their phenylephrine-containing medicines as nasal decongestants, SPA-23-24, the district court reasoned that any alleged state-law duty to remove or alter that indication is unenforceable.  SPA-23-24, SPA-29-30.  The district court also dismissed Plaintiffs' RICO claim because "indirect purchasers" like Plaintiffs lack RICO standing.  SPA-30-31.  No claim survived dismissal.  SPA-33.

Two weeks went by.  *Compare* SPA-33 (memorandum decision and order) *with* SPA-36 (order entering judgment).  Newton's remained silent.

In the interim, Plaintiffs consented to a proposed judgment in which Plaintiffs expressly conceded that the effect of the district court's dismissal was to end the litigation in its entirety.  The proposed judgment reiterated Plaintiffs' agreement that their streamlined complaint contained "sufficient representative examples of the conduct and claims that they allege to be wrongful that a" successful motion to dismiss would "resolve this litigation in its entirety," and that accordingly "all claims in the complaints transferred into the above-captioned master docket are dismissed with prejudice."  NPSA-250-251 (capitalization altered).  Another portion of the proposed judgment—which, again, Plaintiffs consented to—reiterated that "[t]his is

a final, appealable judgment that resolves all of the claims in all of the cases in this multidistrict litigation." NPSA-251.

Six days elapsed before the district court signed the proposed order. *See* SPA-34-36. Again, Newton's raised no objection.

### F. Newton's Seeks, and the District Court Denies, Relief from Final Judgment.

It was only *after* the district court entered final judgment resolving "all of the claims in all of the cases in this multidistrict litigation," SPA-35, that Newton's sought to carve its Lanham Act claim out of the final judgment. *See* NPSA-253-255. Newton's urged that the district court should not have entered final judgment using the broad language Plaintiffs had agreed to because doing so resulted in dismissal of Newton's Lanham Act claim, which "was not included in the Streamlined Complaint." NPSA-254. Newton's argued that the broad language in the final judgment order must have resulted from "mistake and/or inadvertence." *Id.*

The district court denied the motion. SPA-37-39. As the district court explained, "[o]f course [Newton's] claim was not included in [the] streamlined complaint—most claims in the consolidated action weren't." SPA-37. The whole point of the streamlined complaint was that "selected claims in the complaint turned on threshold issues common to the entire action, such that its dismissal would 'resolve this litigation in its entirety, regardless of additional specific examples of wrongful conduct.' " *Id.* (quoting the stipulated order). "If [Newton's] thought its federal

claim should survive a dismissal of the streamlined complaint, it should have told the Committee, or even the Court, much earlier." SPA-38. But Newton's "failure to communicate" is not grounds for relief from final judgment. *Id*.

The district court emphasized that the purpose and effect of the streamlined complaint was not "a product of some clandestine scheme." *Id*. It "was repeatedly discussed at status conferences and on the public docket." *Id*.; *see also id*. (recounting various junctures at which Newton's could have sought to except its Lanham Act claim from the parties' stipulated order). But rather than object or seek clarification, Newton's "sat idly by." SPA-39. Because Newton's "had numerous opportunities to object, to seek a carve-out for its claim, or to at least attempt to reserve its rights to assert that claim," but forewent all of them, the district court held that Newton's "has not shown that it is entitled to the extraordinary relief afforded by Rule 60(b)." *Id*.

The district court also noted that "[e]ven if the Lanham Act claim was included in the Streamlined Complaint, it likely would not have survived a motion to dismiss" because the "Supreme Court has made clear that a Lanham Act suit is precluded when it is 'inconsistent' with an agency's 'policy judgment,' " such as the "FDA's determination that phenylephrine is an effective nasal decongestant." SPA-38 n.1 (citation omitted).

Newton's now appeals.[3]

## SUMMARY OF ARGUMENT

The district court did not abuse its discretion in denying Newton's motion for reconsideration. Rule 60(b) motions are generally "denied unless the moving party can point to controlling decisions or data that the court overlooked" and that "might reasonably be expected to alter the conclusion reached by the court." *Shrader v. CSX Transp., Inc.*, 70 F.3d 255, 257 (2d Cir. 1995). Neither is true here. Newton's has identified no oversight but its own. And there are no issues on which it could prevail on reconsideration.

**I.** Newton's principal argument is brought under the auspices of Rule 60(b)(1), which allows for relief from final judgment based on "mistake" or "inadvertence." Newton's contends that the district court was mistaken to enter judgment on all claims transferred into the MDL because the streamlined-complaint process was never meant to cover Newton's Lanham Act claim. That is wrong. Plaintiffs stipulated that the claims featured in the streamlined complaint were representative of all claims in the MDL, such that dismissal of the streamlined complaint would "resolve this litigation in its entirety." SPA-15. That stipulation is confirmed throughout the record. In the months following the filing of the streamlined

---

[3] Newton's did not join in the separately pending appeal of the district court's underlying judgment. *See* Dkt. No. 24-3296. It seeks remand to the Southern District of Ohio solely for consideration of its Lanham Act claim. Newton's Br. 18.

16

complaint, the parties publicly reiterated time and time again that "the purpose of the streamlined complaint was to focus the parties' and th[e] [district court's] efforts on case-dispositive defenses that, if granted, would end the litigation." NPSA-106. Not only did Newton's fail to raise a concern during these discussions, but Newton's ratified that understanding of the stipulated order when—through Plaintiffs' Executive Committee, which was empowered to act on Newton's behalf—it agreed to a proposed judgment dismissing all claims in the MDL.

Newton's alternatively invokes Rule 60(b)(6)'s backstop provision covering "any other reason that justifies relief." Newton's states that justice requires relief from final judgment here to ensure its Lanham Act claim receives its "day in court." Newton's Br. 32. But it was Newton's obligation, in coordination with Plaintiffs' Executive Committee, to ensure that its claims were represented in the streamlined complaint. To the extent Newton's failed to do so, Rule 60(b)(6) does not grant it a mulligan. As the district court noted, the streamlined complaint was not "a product of some clandestine scheme." SPA-38. Newton's had ample opportunity to object to the stipulated order governing the streamlined complaint. It voiced none. "Having taken [its] chances, [Newton's] cannot be heard to cry foul, and accordingly must live with [its] choice." *United States v. Bank of New York*, 14 F.3d 756, 759-760 (2d Cir. 1994). At the very least, the general preference for adjudication on the merits should not trump Newton's agreement to the broad language of the dismissal order.

**II.** Newton's has not identified a meritorious claim for relief in any event. Newton's Lanham Act claim turns on its allegation that Defendants' drug labels are false. But FDA has determined they are not. *See* 21 C.F.R § 341.80. And, as the district court observed, "Congress straightforwardly delegated the exclusive authority to determine whether a drug is effective to the FDA." SPA-38 n.1.

## STANDARD OF REVIEW

Rule 60(b) motions are "not favored" and are "properly granted only upon a showing of exceptional circumstances." *United States v. Int'l Brotherhood of Teamsters*, 247 F.3d 370, 391 (2d Cir. 2001). That already high bar is higher still when the movant seeks to overturn a district court's determination that relief from final judgment is unwarranted. Denials of relief under Rule 60(b) are reviewed for abuse of discretion. *Johnson v. Univ. of Rochester Med. Ctr.*, 642 F.3d 121, 125 (2d Cir. 2011) (per curiam). Newton's must demonstrate that the district court's decision (1) "rests on an error of law or a clearly erroneous factual finding; or (2) cannot be found within the range of permissible decisions." *Id.* Moreover, this Court is "free to affirm on any ground that finds support in the record, even if it was not the ground upon which the trial court relied." *Carroll v. Trump*, 124 F.4th 140, 161 n.13 (2d Cir. 2024) (per curiam) (quoting *Beijing Neu Cloud Oriental Sys. Tech. Co. v. Int'l Bus. Machines Corp.*, 110 F.4th 106, 113 (2d Cir. 2024)).

# ARGUMENT

## I. THE DISTRICT COURT DID NOT ABUSE ITS DISCRETION BY DENYING THE MOTION FOR RELIEF FROM FINAL JUDGMENT.

### A. Newton's Rule 60(b)(1) Challenge Is Meritless.

Federal Rule of Civil Procedure 60(b)(1) permits a court to "relieve a party or its legal representative from a final judgment, order, or proceeding" for "mistake, inadvertence, surprise, or excusable neglect." Newton's principally argues that the district court misconstrued the stipulated order governing the streamlined complaint, warranting relief under Rule 60(b)(1) for "mistake" or "inadvertence." *See* Newton's Br. 22-31. But the district court understood the stipulated order perfectly. Newton's contention otherwise runs headlong into the language of the stipulated order and the record discussions surrounding it.

**1.** Start with the stipulated order itself. The stipulated order states:

> Plaintiffs hereby represent that they have *filed sufficient representative examples of the conduct and claims that they allege to be wrongful that a motion to dismiss based on preemption and/or primary jurisdiction and/or initial RICO arguments will, if such arguments prevail, resolve this litigation in its entirety*, regardless of additional specific examples of wrongful conduct, additional products named, additional Plaintiff-related allegations, or additional state-law claims that are pled or could be pled in a future Full Master Consolidated Complaint.

SPA-15 (emphasis added).

That language can be understood in only one way, and that is the way in which it was understood by the district court. Plaintiffs agreed that their streamlined complaint contained "sufficient representative examples of the conduct and claims that they allege to be wrongful" that if Defendants moved to dismiss "based on preemption and/or primary jurisdiction and/or initial RICO arguments," and succeeded in those arguments, that would "resolve this litigation in its entirety." The district court granted the motion to dismiss in full, which "resolve[d] this litigation in its entirety." Newton's was therefore not "reasonable in construing" the stipulated order "as preserving its Lanham Act claim for adjudication at a later stage of the litigation." *Contra* Newton's Br. 23.

Seeking to side-step this plain language, Newton's focuses on the "regardless of" clause and points out that it refers to additional state-law claims but not additional federal-law claims. Newton's Br. 26-28. Newton's asks this Court to draw a negative inference that additional federal claims are not within the scope of the stipulated order. Newton's Br. 28.

The district court rightly refused to draw such a negative inference for two reasons. *First*, negative inferences depend "on context." Antonin Scalia & Bryan A. Garner, *Reading Law: The Interpretation of Legal Texts* 107 (2012). They are appropriate "only when circumstances support a sensible inference that the term left

out must have been meant to be excluded." *NLRB v. SW General, Inc.*, 580 U.S. 288, 302 (2017) (quotation marks and alterations omitted).

In context, the stipulated order's "regardless of" clause creates the opposite inference. It underscores Plaintiffs' agreement that no Plaintiff would seek to side-step dismissal of this litigation by later insisting that certain claims were not covered by the streamlined complaint. *See id.* (explaining that a " 'notwithstanding' clause . . . confirms rather than constrains breadth"). It is meant to emphasize the breadth of the stipulated order, not function as a limitation on the types of claims covered by the stipulation. *Contra* Newton's Br. 26-27.

Consider "how we communicate conversationally." *Biden v. Nebraska*, 600 U.S. 477, 513 (2023) (Barrett, J., concurring). If a parent tells her babysitter not to let her children have ice cream "regardless of how much they ask or how much dinner they eat," the babysitter is not by negative implication authorized to give the kids ice cream as an incentive to go to bed. *See id.* at 512-514 (explaining that "[c]ontext also includes common sense"). Just the opposite. Here, the stipulated order's "regardless of" list similarly emphasizes the reach of Plaintiffs' agreement that the litigation will be dismissed "in its entirety" as a result of a successful motion to dismiss. In this regard, the stipulated order effectuates the warning issued by the district court at the very first status conference: Newton's, like all Plaintiffs, would be held to its bargain. *See* A-1159-1160.

*Second*, the "regardless of" list *does* include Newton's Lanham Act claim. As the district court held, a federal-law claim "arising out of the same facts as alleged in the streamlined complaint is quintessentially an 'additional specific example of wrongful conduct.' " SPA-37.

Newton's also urges that the stipulated order could not have covered its Lanham Act claim because that claim appeared only in Newton's complaint. Newton's Br. 22-24. To the extent Newton's is suggesting that the streamlined complaint only asserted claims common across the MDL, that is incorrect. Not every plaintiff filed suit under New York law. And the RICO claim did not feature in any of the underlying complaints in the MDL. SPA-13.

Newton's real issue is with the fact that Plaintiffs did not include Newton's Lanham Act claim in the streamlined complaint that the district court ordered to be representative of all Plaintiffs' claims. But it was Newton's responsibility to object if it believed that its claims were not represented, given that the stipulated order expressly stated that the streamlined complaint must include sufficiently representative claims that a successful motion to dismiss would apply to the MDL litigation "in its entirety." And it is not as though such an objection would have been futile. Plaintiffs successfully added a RICO claim to the streamlined complaint, thereby ensuring that federal-law claim would not be lost based on a motion to dismiss raising a preemption defense applicable only to state-law claims. *See* SPA-14 ("In light

of Plaintiffs' inclusion of the new federal RICO claim, the parties now agree that . . . Defendants are also permitted to raise in their forthcoming Motion to Dismiss certain arguments responsive to the RICO claim.").

Newton's failure to also add its Lanham Act claim does not show that the district court misunderstood the stipulated order.  Perhaps it shows that Newton's was satisfied that the parties' preclusion arguments concerning RICO would apply equally to the Lanham Act.  *Compare infra* pp. 31-35 *with* NPSA-147-149 (Defendants' motion to dismiss arguing that Plaintiffs' RICO claim is precluded under *Apotex*—a case concerning the Lanham Act—because Plaintiffs may not second-guess FDA's longstanding conclusion that phenylephrine is effective).  Perhaps it shows that Newton's thought the Lanham Act claim was not sufficiently meritorious to press.  Or perhaps it shows that Newton's was just not paying attention.  Whatever the case, Newton's should not be heard to raise a belated objection that its Lanham Act claim was not properly represented in the streamlined complaint.  The stipulated order says otherwise.  *See* SPA-15 (stipulating that the streamlined complaint included "sufficient representative examples" of the claims in the MDL that the complete dismissal of the streamlined complaint would "resolve this litigation in its entirety").

For much the same reason, it is irrelevant that the district court limited Defendants to raising "preemption and/or primary jurisdiction and/or initial RICO

arguments" in their motion to dismiss. Newton's Br. 15. Defendants identified those defenses because they were relevant to the claims included in the streamlined complaint. Just as threshold RICO defenses were added to the stipulated order after RICO was added to the streamlined complaint, threshold Lanham Act defenses would have been added to the stipulated order had the streamlined complaint included a Lanham Act claim. *See* SPA-15.

**2.** Any lingering doubt about the meaning of the streamlined complaint is resolved by the parties' own actions. The purpose and effect of the streamlined complaint "was repeatedly discussed at status conferences and on the public docket." SPA-38. Indeed, when Plaintiffs' Executive Committee originally introduced the idea of the streamlined-complaint process, the district court warned that such a process could move forward only if Plaintiffs could "commit to it"—meaning that Plaintiffs would not be permitted to pivot to other claims to keep the litigation alive following dismissal of the streamlined complaint. A-1160:8-16.

Plaintiffs did commit, without a peep of protest from Newton's. *See supra* pp. 7-9. And they reaffirmed their commitment throughout the subsequent proceedings. Indeed, significant disagreement over how to handle discovery arose from the parties' shared understanding that "the purpose of the streamlined complaint was to focus the parties' and [the district court's] efforts on case-dispositive defenses that, if granted, would end the litigation before the parties and the [c]ourt are burdened

with unnecessary discovery." NPSA-106. Given the potential that dismissal of the streamlined complaint would "moot" all claims, NPSA-177:9, Defendants thought full discovery should be delayed until after resolution of the motion to dismiss. NPSA-106. Plaintiffs disagreed, insisting that delay was pointless because they were "confident that their claims w[ould] survive." NPSA-105. And while the district court ultimately decided to "get discovery moving" in case "some portion of the consolidated complaint survive[d] the motion," NPSA-158:6-10, no one—Newton's included—challenged the shared premise that should the motion to dismiss be granted, the entire MDL would be over.

Moreover, if there were any doubt that the parties understood the stipulated order to cover Newton's Lanham Act claim, it is dispelled by Newton's assent to a proposed judgment dismissing all claims in the MDL. The agreed proposed judgment expressly conceded that "whereas" Plaintiffs agreed that their streamlined complaint contained "sufficient representative examples of the conduct and claims that they allege to be wrongful that a" successful motion to dismiss would "resolve this litigation in its entirety," "all claims in the complaints transferred into the above-captioned master docket are dismissed with prejudice." NPSA-250-251 (capitalization altered). The agreed proposed judgment also stated: "This is a final, appealable judgment that resolves all of the claims in all of the cases in this multidistrict litigation." NPSA-251.

There can be no doubt about the scope of that proposed judgment. And Newton's has not contested—and cannot contest—the authority of Plaintiffs' Executive Committee to agree to the proposed judgment on its behalf. *See* SPA-37. Even if Newton's argument were that Plaintiffs' Executive Committee failed "to evaluate carefully the legal consequences of" agreeing to the proposed judgment (or the stipulated order, for that matter), such an argument "provides no basis for relief." *Nemaizer*, 793 F.2d at 62. "Mere dissatisfaction in hindsight with choices deliberately made by counsel is not grounds for finding the mistake, inadvertence, surprise or excusable neglect necessary to justify Rule 60(b)(1) relief." *Id*. If Newton's thought that its Lanham Act claim survived the stipulated order and the district court's dismissal order, at the very least Newton's should have objected to the entry of a final judgment dismissing its claim with prejudice.

### B. Newton's Rule 60(b)(6) Challenge Is Meritless.

Newton's argues in the alternative that, even if the district court correctly understood the stipulated order, Newton's was entitled to relief under Rule 60(b)(6)'s catchall provision. That provision provides for relief from judgment for "any other reason that justifies relief." Fed. R. Civ. P. 60(b)(6). But Rule 60(b)(6) is "properly invoked only when there are extraordinary circumstances justifying relief, [and] when the judgment may work an extreme and undue hardship." *Nemaizer*, 793 F.2d at 63 (citation omitted). Newton's has identified no such circumstances here.

**1.** Newton's argues that relief was justified to ensure that its Lanham Act claim receives consideration on the merits. Newton's Br. 31-34. But the general preference for adjudicating issues on the merits has limits. A party cannot use the preference to "indulge [its] discontent over the effects of its bargain." *Andrulonis v. United States*, 26 F.3d 1224, 1235 (2d Cir. 1994) (quoting *Kozlowski v. Coughlin*, 871 F.2d 241, 246 (2d Cir. 1989)). That Newton's "fail[ed] to recognize the effect of the agreed-upon stipulation" is not a basis for relief under Rule 60(b)(6), just like it is not a basis for relief under Rule 60(b)(1). *Nemaizer*, 793 F.2d at 63.

*Nemaizer* is instructive. There, plaintiffs asserted various state-law rights to draw from an employee benefit trust fund. *Id.* at 60. The plaintiffs stipulated to dismissal of their complaint with prejudice after the case was removed to federal court. *Id.* The plaintiffs then initiated a new lawsuit seeking the same relief based on the same operative facts, but this time pleading a federal claim. *Id.* The defendant moved to dismiss the second complaint under res judicata, and the district court indicated that it would dismiss the new suit on that ground unless the plaintiffs convinced the judge in the original suit to modify the earlier order to encompass only dismissal of the plaintiffs' original state-law complaint. *Id.* The original judge granted that request under Rule 60(b), determining that "a genuine misunderstanding had occurred concerning the stipulation's scope and that equity dictated giving [the plaintiffs] an opportunity to make their [federal] claims in federal court." *Id.*

This Court reversed, explaining that "failure to evaluate carefully the legal consequences of a chosen course of action provides no basis for relief from a judgment"—under either Rule 60(b)(1) or Rule 60(b)(6). *Id*. at 62-63. Rule 60(b)(1) did "not provide an avenue for relief" because the parties "voluntarily agreed to dismiss plaintiff's action with prejudice," and "[t]he clear language of the district court's order served notice that basic *res judicata* principles would bar future actions." *Id.* at 62. Rule 60(b)(6) did not warrant relief either, because "justice and equity" would not be served by allowing a party to assert a claim that "the parties have stipulated not to raise," even if the plaintiff failed to recognize the preclusive effect of the stipulation. *Id.* at 63-64.

So too here. If Newton's "intended to preserve" its Lanham Act claim, it "should not have entered into this type of . . . stipulation." *Id.* at 62. The whole point of selecting representative claims for the streamlined complaint was to permit the court to "resolve this litigation in its entirety" without slogging through each individual claim presented in a master complaint. SPA-15. It was Newton's obligation to ensure that either its Lanham Act claim was properly represented in the streamlined complaint or that the stipulated order clearly preserved its ability to raise its Lanham Act claim later. Newton's failure to do so is not grounds to "vacate the judgment under Rule 60(b)(6)," irrespective of whether it arose from oversight or a "good faith mistake." *Nemaizer*, 793 F.2d at 62-63.

**2.** Newton's arguments to the contrary are unavailing. Newton's attempts to compare itself to the movant in *Corning Glass Works v. Sumitomo Electric U.S.A., Inc.*, 683 F. Supp. 979 (S.D.N.Y. 1988). There, the defendant moved for reconsideration of a judgment finding willful infringement of a patent on the ground that the defendant had been led to understand that the issue of willfulness would be considered at the damages rather than the liability stage of the bifurcated trial. *Id*. at 980. The district court indicated that it would grant rehearing after acknowledging that "its comment might have misled" the defendant. *Id*.

This case could not be more different. As discussed, the stipulated order was not misleading or even ambiguous. *See supra* pp. 19-21. And far from agreeing that Newton's may reasonably have understood the streamlined complaint to preserve its Lanham Act claim, the district court observed that a federal-law claim "arising out of the same facts as alleged in the streamlined complaint is quintessentially an 'additional specific example of wrongful conduct' " covered by the stipulated order. SPA-37. And if that were not enough, "the complaint's purpose was repeatedly discussed at status conferences and on the public docket." SPA-38. Newton's was not misled. To the contrary, Newton's ultimately ratified that the stipulated order covered its Lanham Act claim when the Plaintiffs' Executive Committee agreed to the very proposed judgment that it now says was a mistake. Even if the stipulated order itself were somehow ambiguous, the proposed final judgment order was not. It

plainly stated that "[a]ll claims in the complaints transferred into the above-captioned master docket are dismissed with prejudice." NPSA-251. Surely at that point Newton's was obligated to object.

Equally misplaced is Newton's reliance (at 31-33) on the rule that courts should " 'freely give leave' to amend" a complaint, *Williams v. Citigroup Inc.*, 659 F.3d 208, 212 (2d Cir. 2011) (per curiam) (quoting Fed. R. Civ. P. 15(a)(2)), and the "lenient standard" applicable to a motion to set aside an entry of default, *Meehan v. Snow*, 652 F.2d 274, 277 (2d Cir. 1981) (per curiam). The preference for adjudication on the merits reflected by these standards is "tempered by considerations of finality" once a final judgment has been entered. *Williams*, 659 F.3d at 213; *accord Meehan*, 652 F.2d at 276 (noting that "the standard for setting aside the entry of a default pursuant to Rule 55(c) is less rigorous than the 'excusable neglect' standard for setting aside a default judgment by motion pursuant to Rule 60(b)").

More fundamentally, even under these more lenient standards, there is a strong "justifying reason" to deny the post-judgment relief Newton's seeks. *See Mandala v. NTT Data, Inc.*, 88 F.4th 353, 365 (2023) (quoting *Foman v. Davis*, 371 U.S. 178, 182 (1962)). As repeatedly explained, Newton's stipulated through the Plaintiffs' Executive Committee that all claims were represented in the streamlined complaint and that dismissal of the streamlined complaint would result in dismissal

of all claims in the MDL.  *See supra* pp. 7, 24-25, 29-30.  Newton's is not entitled to a second bite at the apple.

## II. THE COURT MAY AFFIRM FOR THE INDEPENDENT REASON THAT RELIEF FROM FINAL JUDGMENT WOULD NOT ALTER THE OUTCOME.

Even if the Court does not reject Newton's attempt to re-write the stipulated order and proposed judgment, affirmance is warranted because Newton's Lanham Act claim would fail on the merits based on preclusion principles.[4]  To succeed on a Rule 60(b) motion, the movant must identify "a meritorious claim or defense . . . waiting to be adjudicated."  *DeMarkey v. Greenwich Hosp. Ass'n*, 454 F. Supp. 351, 354 (D. Conn. 1978) ("A movant will not prevail under Rule 60(b) without some showing of such a meritorious claim or defense."); *see also Shrader*, 70 F.3d at 257 (explaining that Rule 60(b) motions are generally denied unless relief "might reasonably be expected to alter the conclusion reached by the court").  Newton's has failed to do so here.

Section 43(a) of the Lanham Act creates a cause of action for misleading advertising or labeling.  *See* 15 U.S.C. § 1125(a).  Newton's Lanham Act claim turns

---

[4] If this Court determines that remand is appropriate in the first instance to allow the district court to rule on the parties' preclusion arguments, that remand should empower Judge Cogan in the Eastern District of New York to decide the issue.  The JPML transferred all cases to the Eastern District of New York for coordinated pretrial proceedings.  SPA-1.  And the JPML specifically assigned the MDL to Judge Cogan to "steer this litigation on a prudent and expeditious course."  SPA-3.  Newton's provides no reason to reverse the JPML's decision.

on its contention that Defendants' labels and advertisements are false because they indicate that phenylephrine has "therapeutic effect." Newton's Br. 32 n.4. But FDA has said that contention is true. *See* 21 C.F.R. § 341.80. In fact, FDA has *mandated* that Defendants label their products with the very indication that Newton's challenges. *See supra* pp. 2-3; Appellees' Br. 7-8 (No. 24-3296). That is dispositive. As this Court made clear in *Apotex*, "representations commensurate with information in an FDA label generally cannot form the basis for Lanham Act liability." 823 F.3d at 64. That is because FDA is "the agency responsible for approving the truthfulness of the content of the label." *Church & Dwight Co. v. SPD Swiss Precision Diagnostics, GmbH*, 843 F.3d 48, 73 n.13 (2d Cir. 2016). The district court thus correctly observed that "Congress straightforwardly delegated the exclusive authority to determine whether a drug is effective to the FDA, and it was therefore not 'false' to state that oral phenylephrine is an effective nasal decongestant." SPA-38 n.1.

Newton's says it is challenging "the literal and actual falsity of the defendants' marketing," not FDA's "policy" determination that phenylephrine is safe and effective. Newton's Br. 32 n.4. Under *Apotex*, those are one and the same. Like the plaintiff in *Apotex*, Newton's contends "that a fact about the pharmacological effects of a drug, which FDA has determined to be true, should nonetheless be found by the court to be false." *Church & Dwight*, 843 F.3d at 73 n.13 (describing the holding in

*Apotex*).  But "the truth or falsity of an FDA-approved factual assertion about the effects of a medical product" falls squarely within FDA's authority "as the agency responsible for approving the truthfulness of the content of" a drug label.  *Id*.  Such determinations are challengeable using the administrative procedures outlined in the FDCA.  Newton's may not circumvent those procedures by filing suit under the Lanham Act.

Newton's nevertheless relies on *POM Wonderful LLC v. Coca-Cola Co.*, 573 U.S. 102 (2014), and *Church & Dwight*, 843 F.3d 48, to argue that its Lanham Act claim is not precluded.  Newton's Br. 32-33 n.4.  Those cases only confirm why the Lanham Act claim fails.

The plaintiff in *POM Wonderful* alleged that the defendant's practice of calling its juice blend "pomegranate blueberry," when it only contained 0.3% pomegranate juice and 0.2% blueberry juice, was deceptive in violation of the Lanham Act.  573 U.S. at 105-106, 110.  The defendant tried to argue that this claim was precluded because the challenged label complied with FDA regulations regarding the proper labeling of juice blends.  *Id*. at 109.

The Supreme Court disagreed, explaining that FDA's regulation of food and beverage labels has a different "scope and purpose" from the Lanham Act.  *Id*. at 115.  "Although both statutes touch on food and beverage labeling, the Lanham Act protects commercial interests against unfair competition, while the FDCA protects

public health and safety." *Id.* Each statute thus plays a unique and complimentary role in the realm of food labeling. FDA leverages its expertise in health and safety to protect consumers. *See id.* at 115-116. The Lanham Act leverages a market competitor's relative advantage in "awareness of unfair competition practices" to protect competitors. *Id.* at 115. The plaintiff's Lanham Act claim was not precluded by the FDCA in *POM Wonderful* because that claim dealt with unfair marketing rather than a judgment about health and safety committed to FDA.

Like *POM Wonderful*, this Court's decision in *Church & Dwight* implicated the relative expertise of market competitors on "the question of whether the phrasing of advertising messages might be misunderstood by consumers" rather than a question about medical safety or effectiveness. 843 F.3d at 73 n.13. *Church & Dwight* thus did "not second guess[] the FDA on matters as to which its competence vastly exceeds that of courts." *Id.*; *see also id.* at 63 (explaining that the "Lanham Act protects commercial interests against unfair competition, while the FDCA protects public health and safety" and that FDA "does not have a mission to protect the concerns of a competitor harmed by the regulated entity's misleading advertising or labeling" (quotation marks omitted)).

But as *Church & Dwight* recognized, there is a distinction between a case challenging "the phrasing of advertising messages" because they "might be misunderstood by consumers," and one contending "that a fact about the pharmacological

effects of a drug, which the FDA has determined to be true, should nonetheless be found by the court to be false." 843 F.3d at 73 n.13 (describing the holding in *Apotex*). This case, like *Apotex*, falls on the latter side of the line. *Id.* Accordingly, while Lanham Act claims are not precluded where the plaintiff's claim is not premised on "second-guess[ing] the FDA on matters as to which its competence vastly exceeds that of courts," *id.*, that situation is not presented here.

Because Newton's Lanham Act claim is precluded under governing case law, *see, e.g.*, *Apotex*, 823 F.3d at 64, Newton's fails to raise any "meritorious" claim left to be adjudicated. *DeMarkey*, 454 F. Supp. at 354. That is an independent reason for this Court to affirm the district court's denial of Newton's motion for Rule 60(b) relief.

# CONCLUSION

For the foregoing reasons, this Court should affirm the denial of Newton's motion for relief from judgment under Rule 60(b).

Respectfully submitted,

/s/ Andrew Soukup
Andrew Soukup
David M. Zionts
Victoria Stilwell
COVINGTON & BURLING LLP
One City Center
850 Tenth Street, NW
Washington, DC 20001
(202) 662-6000

*Attorneys for Defendant-Appellee*
*The Procter & Gamble Company*


/s/ Hannah Y. Chanoine
Hannah Y. Chanoine
Bruce Crawford
O'MELVENY & MEYERS LLP
Times Square Tower
7 Times Square
New York, NY 10036
(212) 326-2000

Amy J. Laurendeau
O'MELVENY & MEYERS LLP
610 Newport Center Drive, 17th Floor
Newport Beach, CA 92660
(949) 823-6900

/s/ Jessica L. Ellsworth
Jessica L. Ellsworth
HOGAN LOVELLS US LLP
555 Thirteenth Street, N.W.
Washington, D.C. 20004
(202) 637-5886
jessica.ellsworth@hoganlovells.com

James L. Bernard
HOGAN LOVELLS US LLP
390 Madison Avenue
New York, NY 10017
(212) 918-3121

Lauren S. Colton
HOGAN LOVELLS US LLP
100 International Drive, Suite 200
Baltimore, MD 21202
(410) 659-2733

*Attorneys for Defendant-Appellee*
*RB Health (US) LLC*


/s/ Jay P. Lefkowitz, P.C.
Jay P. Lefkowitz, P.C.
Jacob M. Rae
KIRKLAND & ELLIS LLP
601 Lexington Avenue
New York, NY 10022
(212) 446-4800

Jason Zarrow
O'Melveny & Myers LLP
400 South Hope Street, 19th Floor
Los Angeles, CA 90071
(213) 430-6000

*Attorneys for Defendant-Appellee*
*Johnson & Johnson Consumer Inc.*

Robyn E. Bladow
Kirkland & Ellis LLP
555 S. Flower Street
Los Angeles, CA 90071
(213) 680-8400

Cole Carter
Kirkland & Ellis LLP
333 West Wolf Point Plaza
Chicago, IL 60654
(312) 862-1951

*Attorneys for Defendant-Appellee*
*Haleon US Holdings LLC*

May 30, 2025

## CERTIFICATE OF COMPLIANCE

1.     This document complies with the type-volume limits of Fed. R. App. P. 32(a)(7) because, excluding the parts of the document exempted by Fed. R. App. P. 32(f), this document contains 8,090 words.

2.     This document complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6) because this document has been prepared in a proportionally spaced typeface using Microsoft Word for Office 365 in 14-point Times New Roman.

/s/ Jessica L. Ellsworth
Jessica L. Ellsworth

**CERTIFICATE OF SERVICE**

I hereby certify that the foregoing was filed with the Clerk using the appellate ACMS system on May 30, 2025. All counsel of record are registered ACMS users, and service will be accomplished by the ACMS system.

/s/ Jessica L. Ellsworth
Jessica L. Ellsworth